**MIDWEST PROPERTIES NO. TWO**

v.

**BIG HILL INVESTMENT CO., INC., et al.**

**Civ. A. No. 4–88–16–E.**

United States District Court, N.D. Texas, Fort Worth Division.

Dec. 7, 1988.

J.K. Skillern, Simon, Anisman, Doby, Wilson & Skillern, Fort Worth, Tex., for Midwest Properties.

Bruce D. Atherton, Barnett & Alagia, Louisville, Ky., Richard M. Trautwein, Steven H. Keeney, Michael J. Leibson, Barnett & Alagia, Louisville, Ky., Julia Dobbins, Charles Florsheim, Reynolds Shannon Miller Blinn White & Cook, Fort Worth, Tex., for Big Hill Investment Co. et al.

Jane S. Nahra, John Flowers, Locke, Purnell, Rain, Harrell, Dallas, Tex., for Steven H. Keeney.

## MEMORANDUM OPINION

MAHON, District Judge.

James McClain, Steven Brown, and Steven Keeney, Appellants, appeal from an order of the bankruptcy court imposing sanctions for the bad faith filing of the Chapter 11 proceeding from which this in-

terlocutory appeal arises. Several procedural motions are currently pending, and the Appellants have also filed timely objections to a contempt order entered by the bankruptcy court for the Appellants' alleged failure to comply with the bankruptcy court's order imposing monetary sanctions. Under Bankruptcy Rule 9020, the filing of these objections triggers the de novo review provisions of Rule 9033(d). Since the validity of the contempt order is contingent upon the affirmance of the sanctions imposed, the Court examines the sanctions order first. As will be seen, the sanctions order must be vacated in part and reversed in part; hence, a de novo review of the contempt findings is not necessary.

### FACTUAL SUMMARY

On November 17, 1987, the bankruptcy court granted a motion for sanctions brought collectively by the "Movants," Big Hill Investment Company, Inc., Hancock Investments, Hospitality Associates, Woodbriar Inc., and Ripalo, Inc., all creditors of the debtor corporation, Midwest Properties, Inc. The bankruptcy court found that Midwest had filed the company's Chapter 11 proceeding in bad faith and that Midwest had improperly used the cash collateral assigned to the movants without the bankruptcy court's approval. The bankruptcy court ordered McClain, Midwest's president, to pay sanctions in the amount of $141,660.00. The bankruptcy court also imposed sanctions upon Brown, Midwest's attorney who had signed its bankruptcy petition, in the amount of $18,888.00. Keeney, an attorney for Midwest who had signed one responsive pleading and who had made only one appearance before the bankruptcy court—specifically, the hearing held on the motion for sanctions—was also assessed a monetary sanction in the amount of $28,332.00. The sanctions awarded, totaling $188,880.00, were to be paid by December 7, 1987.

Timely notices of appeal from the sanctions order were filed by the Appellants. On December 8, 1987—the day after the sanctions were due to be paid—the Appellants moved, in the bankruptcy court, for a stay of the sanctions order pending appeal. On December 10, 1987, the Movants asked that the bankruptcy court hold the Appellants in contempt for their failure to comply with its sanctions order. On December 22, 1987, the bankruptcy court stayed its sanctions order, and later, on January 8, 1988, in an oral order, the bankruptcy court set this stay aside, and overruled the Appellants' motions for stay pending appeal. In its January 8 oral order, the bankruptcy court extended the time for paying the sanctions until January 8 (the same day) at 4:00 p.m. If the sanctions were not paid by January 13, 1988, a ten percent penalty would be added as an additional sanction. If the sanctions were not paid by this time, McClain, Keeney, and Brown would "be held in civil contempt," "taken into custody by the United States Marshal," and "imprisoned until the sanctions are paid in full."

On January 8, 1988, this Court stayed Judge Tillman's sanctions order pending appeal. On January 12, 1988, the Movants filed two motions in the bankruptcy court. First, they asked the bankruptcy court to enter findings of fact and conclusions of law in support of its November 17, 1987 order imposing sanctions. Second, the Movants asked the court to enter a written order denying the Appellants' motions for stay and holding the Appellants in "civil" contempt. Further, the Movants asked that the contempt order be modified so that the sanctions assessed were "in the form of a conditional order specifying the penalty to be imposed unless the parties purge themselves of contempt. . . ." Attached to the Movants' motion was a prepared order to this effect. Keeney's counsel, too, prepared a separate, written version of the contempt order and order denying stay. Keeney's proposed order comported with the bankruptcy court's verbal ruling of January 8.

On January 27, 1988, the bankruptcy court entered both versions of the proposed "Civil Contempt Order" and "Order Denying Stay." It is unclear which controls. Also, on January 27, 1988, the bankruptcy court entered supplemental findings of fact and conclusions of law in support of its November 17 sanctions order.

1. *Was the appeal of the sanctions order interlocutory?*

 An appeal from an order granting or denying sanctions is interlocutory. *See, e.g., Meche v. Dan–Tex International, Inc.,* 681 F.2d 264, 265 (5th Cir.1982). While leave of the district court is required to bring an interlocutory appeal, 28 U.S.C. § 158(a), Bankruptcy Rule 8003(c) permits

the district court to grant leave, though the appeal was improvidently taken, if a notice of appeal has been timely filed. Here, notice of appeal was timely filed, but the Appellants did not motion for leave.

Given the fact that the Appellants were required either to pay the sanctions or face increased penalties and possible imprisonment, the Court finds that the circumstances justify immediate review. Therefore, the Court will treat the Appellant's notice of appeal as a motion for leave to appeal. Accordingly, the motion for leave, thus considered, is GRANTED, and the Movant's motion to dismiss on this jurisdictional ground is DENIED.

2. *Could the sanctions order be supplemented with findings of fact and conclusions of law two months after its date of entry?*

■ The Movants' motion for sanctions was clearly a contested matter. As provided by Bankruptcy Rule 9014, Bankruptcy Rule 7052 applies to contested matters. Bankruptcy Rule 7052 adopts Federal Rule of Civil Procedure 52 and, therefore, Rule 52 applies to Judge Tillman's November 17 sanctions order.

Federal Rule of Civil Procedure 52(b) provides that "[u]pon motion of a party made not later than 10 days after entry of judgment the court may amend its findings or make additional findings and amend the judgment accordingly." Here, the Movants' motion for findings of fact and conclusions of law came almost two months after the sanctions order was entered. As a timely notice of appeal from the sanctions order had been filed, Judge Tillman was powerless—after December 1, 1987—to supplement, amend, or modify his November 17 sanctions order with additional findings of fact or conclusions of law.

"The rule is well established that the taking of an appeal transfers jurisdiction from the Bankruptcy Court to the Appellate Court with regard to any matters involved in the appeal and divests the Bankruptcy Court of jurisdiction to proceed further with such matters...." [1] Under Rule

52(b), the Bankruptcy Court ceased to have jurisdiction to issue findings of fact or conclusions of law 10 days after it issued its sanctions order. *See In re Texas Extrusion Corp.*, 836 F.2d 217, 220–21 (5th Cir. 1988) ("This 10 day period of Rule 52(b) is jurisdictional and cannot be extended in the discretion of the court.") (citing *Gribble v. Harris*, 625 F.2d 1173, 1174 (5th Cir.1980)).

■ While the lack of findings will generally require that the judgment or order below be vacated and remanded, findings are, of course, not a jurisdictional requirement *of appeal. Texas Extrusion*, 836 F.2d at 221 (emphasis added). "[C]ursory findings and conclusions or even the complete lack of findings and conclusions does not necessarily require a reversal of the judgment if a full understanding of the issues on appeal can nevertheless be determined by the appellate court." *Id.* Moreover, the Fifth Circuit Court of Appeals has specifically rejected "a rule that would impose ... the onerous and often time-consuming burden of making specific findings and conclusions in all Rule 11 cases." *Thomas v. Capital Sec. Serv., Inc.*, 836 F.2d 866, 883 (5th Cir.1988) (en banc). However, where the "basis and justification" for the sanctions order is "not readily discernible on the record, an adequate explanation" for the bankruptcy court's decision is required. *Id.*

Thus, this Court has no alternative but to consider Judge Tillman's findings of fact and conclusions of law entered on January 27, 1988 in support of his sanctions order as merely "gratuitous statements" of the bankruptcy judge. *Texas Extrusion*, 836 F.2d at 221. They have no force or effect upon the November 17, 1987 sanctions order from which this appeal was brought, and, hence, they will be given no consideration here. In essence, the findings are a nullity. Still, this Court must look to the record below, considered together with the brief explanation provided by the bankruptcy court in its November 17 order, to determine whether any "basis or justification" exists for an affirmance of the sanctions imposed.

1. *Ingersoll–Rand Financial Corp. v. Kendrick Equipment Corp. (In re Kendrick Equipment Corp.)*, 60 B.R. 356 (Bankr.W.D.Va.1986). *See also In re Combined Metals Reduction Company*, 557 F.2d 179 (9th Cir.1977); *In re Bialac*, 15 B.R. 901 (Bankr. 9th Cir.1981), *aff'd*, 694 F.2d

625 (9th Cir.1982); *In re Excavation Construction, Inc.*, 8 B.R. 752 (D.Md.1981); *In re Urban Development Ltd, Inc.*, 42 B.R. 741 (Bankr.M.D. Fla.1984); *In re Hardy*, 30 B.R. 109 (Bankr.S.D. Ohio 1983).

3. *Was the imposition of monetary sanctions an abuse of discretion?*

■ Bankruptcy Rule 9011 tracks Rule 11 of the Federal Rules of Civil Procedure. Rule 9011 provides in pertinent part that "[i]f a document is signed in violation of this rule, the court ... shall impose on the person who signed it, the represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee." While the imposition of sanctions is mandatory once a violation of Rule 9011 is found, the imposition of *monetary* sanctions is permissive. *See Thomas,* 836 F.2d at 877–78. Moreover, while monetary sanctions may be appropriate, the Fifth Circuit Court of Appeals has continuously stated that "the basic principle governing the choice of sanction is that the least severe sanction adequate to serve the purpose should be imposed." *Id.* at 878. The range of "appropriate" sanctions is far-reaching and may include "a warm friendly discussion on the record, a hard-nosed reprimand in open court, compulsory legal education, monetary sanctions, or other measures appropriate to the circumstances." *Id.*

With these standards in mind, the Court reviewed the record of the proceedings below to determine whether the monetary sanctions imposed upon the Movants were both appropriate and the least severe sanction available to the bankruptcy court under the circumstances of the case. The standard of review utilized, as mandated by the Fifth Circuit in *Thomas,* was abuse of discretion. *Id.* at 873.

a. *Sanctions assessed against McClain and Brown*

■ Judge Tillman's November 17, 1987 order states that sanctions were assessed against McClain and Brown, his attorney, for the bad faith filing of Midwest's Chapter 11 petition and for the utilization of cash collateral without the bankruptcy court's approval. Ample evidence exists in the record developed below to support this conclusion.

To forestall the Movants' right of foreclosure, McClain and Brown filed a Chapter 11 proceeding on behalf of the Debtor-corporation, Midwest Properties, Inc. # 2. Midwest was incorporated shortly after the Movants initiated a suit to foreclose on certain hotel properties located in Ohio. Suncloud Properties, Inc., the sole shareholder of Midwest properties as of the date of its incorporation, had executed a mortgage note to the Movants, secured by the Ohio hotel properties. When foreclosure was imminent, the hotels were transferred to Midwest. Midwest then sought the protection of the bankruptcy court under the provisions of Chapter 11. Midwest's Chapter 11 petition was signed by Brown.

The Midwest Properties' bankruptcy is just one example of Mr. McClain's practice of creating a "new debtor" to forestall foreclosure. In the last two years, McClain has filed at least six other "new debtor" cases in this District and four in the Southern District of Texas. In each instance, a new corporation was formed and a single asset conveyed out of an existing entity into the "new debtor" corporation on the eve of bankruptcy. The names of either Mr. McClain or Mr. Brown appeared on either the articles of incorporation or the bankruptcy petition in every single case.[2]

Evidence exists in the record below to substantiate Judge Tillman's finding that the bankruptcy petition in this case was filed in bad faith. Each bankruptcy petition filed by McClain, or by Brown at McClain's behest, involved a single asset of real estate. The debtor-corporations formed on the eve of foreclosure have no employees except for those working on the premises of each property. Virtually no indebtedness existed other than mortgages held against the various properties. In each case filed, including this one, no single, confirmed plan of reorganization has

---

**2.** Brown's contention that he merely signed and filed pleadings upon Keeney's instructions is without merit. As Judge Owen wrote in *Long v. Quantex Resources, Inc.,* "at the very least, a local counsel that signs the papers of foreign counsel must read the papers, and from that have a basis for a good faith belief that the papers on their face appear to be warranted by the facts asserted and the legal arguments made, and are not interposed for any improper purpose." 108 F.R.D. 416 (S.D.N.Y.1985). Moreover, the names of McClain and Brown appear on either the articles of incorporation or the bankruptcy petitions in the 10 questionable "new-debtor" bankruptcies filed in the Northern and Southern Districts by the pair. As of October 14, 1987, Brown owned 55% of Suncloud, Inc., Midwest Properties' parent corporation. Thus, his involvement clearly was more than that of "local counsel."

resulted. In this case, particularly, income was inadequate to sustain a plan of reorganization or to provide adequate protection payments. The hotel properties in issue had been foreclosed on through state court proceedings; foreclosure was imminent, and bankruptcy court protection provided the only hope of forestalling the properties' loss.

Under these circumstances, the evidence adduced at the October 14, 1987 hearing was sufficient to sustain a bad faith filing under the factors set forth by the Fifth Circuit Court of Appeals in *In re Little Creek Dev. Co.*, 779 F.2d 1068, 1072–73 (5th Cir.1986). As Judge Jones aptly stated, "[t]he new debtor syndrome, in which a one-asset entity has been created or revitalized on the eve of foreclosure to isolate the insolvent property and its creditors, exemplifies, although it does not uniquely categorize, bad faith cases. "*Id.* at 1073.

Rule 9011 recognizes that reasonable expenses incurred because of an improper filing of a petition in bankruptcy may be awarded against and imposed, as a sanction, on the person who signed the petition—in this case, Brown—or the represented party—here, McClain—*or both.* Testimony developed at the October 14, 1987 hearing indicates that substantial attorney fees and expenses were incurred by the Movants when seeking relief from the automatic stay activated by the filing of the bankruptcy petition in this case. Given the concerted practice of both Brown and McClain of filing new debtor cases on the eve of foreclosure—six in the Northern District alone—the Court cannot conclude that Judge Tillman abused his discretion in awarding monetary sanctions against *both* Brown and his client, McClain.

In regard to Judge Tillman's imposition of sanctions on McClain and Brown for the improper use of cash collateral in violation of title 11, section 363(c)(1), this Court's review of the record finds ample evidence to support his finding that cash collateral was improperly used without the affirmative consent of the creditors or an order of the bankruptcy court. Despite the requirement of section 363(c)(4) that the debtor-in-possession segregate and account for any cash collateral in its possession, the testimony adduced at the October 14 hearing reveals that Midwest never established a "debtor-in-possession" account. The evidence is undisputed that the Movants never consented to Midwest's use of cash collateral, nor did the bankruptcy court approve of such use. Yet, absent such consent or approval, Midwest spent over $550,000.00 in cash collateral between April 14 and May 26, 1987. A determination of whether this money was actually spent on the operations of the hotels is not feasible, as the hotels did not have a set of books or financial records.

Both McClain and Brown testified that they were aware that debtor-in-possession accounts needed to be established but were not. McClain is the president of Midwest Properties and its parent-corporation, Suncloud. Midwest Properties is one-hundred percent owned by Suncloud. Brown, McClain's attorney, owns 55 percent of Suncloud and is also a principal officer of Midwest Properties. Brown also had discussed the possibility of entering into a cash collateral agreement with the Movants, yet neither he, nor McClain, took any action to establish the debtor-in-possession accounts.

Both McClain and Brown point their finger at Keeney, alleging that they relied on his advice that the establishment of the debtor-in-possession accounts was unnecessary. Keeney denied these allegations at an additional hearing held on November 6, 1987, in this matter. Even if these accusations are true,[3] given the respective interests of McClain and Brown in Suncloud, their participation in the filing of Midwest's Chapter 11 petition, and their general familiarity with bankruptcy proceedings, this Court cannot find that their alleged reliance on Keeney's representations was justifiable.

Accordingly, this Court cannot say, based on the evidence adduced at the October 14th hearing, that Judge Tillman abused his discretion when awarding monetary sanctions against McClain and Brown for Midwest's unauthorized use of cash collateral. Since Judge Brister's decision in *In re Aerosmith Denton Corp.*, 36 B.R. 116, 119 (Bankr.N.D.Tex.1983), all counsel in the Northern District of Texas have been placed on notice that "proper sanctions can be imposed against those respon-

---

**3.** There is ample evidence to support them. *See infra* section 3(b) of this Opinion which discusses the conflicting testimony of the Appellants concerning the advice given as to the use of cash collateral.

sible for use of cash collateral after a Title 11 case has been filed when there has been no compliance with Section 363(c)(2)." [4]

#### b. *Sanctions Assessed Against Keeney*

Bankruptcy Rule 9011, like Rule 11 of the Federal Rules of Civil Procedure, imposes only an obligation in connection with signing pleadings, not a continuing obligation of good faith.[5] The Fifth Circuit Court of Appeals has held "that a construction of Rule 11 which evaluates an attorney's conduct at the time a pleading, motion or other paper is signed is consistent with the intent of the rulemakers and the plain meaning of the language contained in the rule.... Rule 11 was promulgated for a particular purpose—to check abuses in the signing of pleadings." *Thomas,* 836 F.2d at 874.

■ The record in the bankruptcy court conclusively establishes that Keeney filed only one responsive pleading on behalf of Midwest Properties and made only one appearance before the bankruptcy court and that appearance was made in connection with the Movants' motion for sanctions. Brown signed and filed Midwest's voluntary petition under Chapter 11, not Keeney. Keeney's retention by Midwest spanned a period of 24 days, April 28, 1987, to May 21, 1987. About May 21, 1987, Keeney was discharged by Suncloud and subsequently filed mandatory withdrawal papers in the bankruptcy proceeding.

Since Rule 9011 permits only the imposition of sanctions on the "person who signed" the pleading in violation of the Rule, Keeney cannot be sanctioned for bad-faith filing of Midwest's bankruptcy petition. The petition was signed by Brown. Thus, to the extent that Judge Tillman's November 17 order imposes sanctions on Keeney for the bad faith filing of Midwest's bankruptcy petition, his order must be vacated.

■ To the extent that Judge Tillman's November 17 order imposes sanctions on Keeney for Midwest's unauthorized use of cash collateral, his order must be reversed and remanded for further proceedings. Keeney was foreign or "special" counsel for Midwest during the period in which the unauthorized use of cash collateral took place. Both Brown and McClain testified that Keeney was the attorney responsible for advising Midwest that neither debtor-in-possession accounts nor bankruptcy court approval for the use of cash collateral was required. Keeney, however, at a subsequent hearing held in this matter on November 6, 1987, testified to the contrary, contending that he had instructed Brown, McClain, and Suncloud's chief financial officer on the proper procedures for segregating cash collateral, setting-up debtor-in-possession accounts, and obtaining creditor consent or bankruptcy court approval for the use of cash collateral.

The bankruptcy judge heard the testimony of McClain, Brown, and Keeney. He observed the witnesses and had been involved in this case since its inception. The bankruptcy judge was in the best position to determine the credibility of witnesses and assess the weight of the evidence submitted. Despite Keeney's protestations to the contrary, there was sufficient evidence that Keeney advised Midwest that it was not required to establish a debtor-in-possession account or obtain bankruptcy court approval for the use of cash generated from the three hotels. Based on the record thus developed, this Court cannot substitute its judgment for that of the bankruptcy court on the issue of the witnesses' credibility, especially when ample evidence exists to support the determination made below, nor can this Court say that bankruptcy court abused its discretion in assessing monetary sanctions against Keeney for Midwest's unauthorized use of cash collateral.

■ However, because Judge Tillman did not apportion the amount of sanctions awarded against Keeney, $28,332.00, between those awarded for a violation of Rule 9011 and those awarded for a violation of section 363(c)(2), the November 17 order, to the extent it imposes sanctions on Keeney for use of cash collateral in violation of section 363(c)(2), must be reversed and remanded for further proceedings. As the discussion below demonstrates, when an order awarding sanctions, or the record supporting it, does not adequately reveal how the fees and expenses reimbursed

---

**4.** *See also In re Williams,* 61 B.R. 567, 575 n. 9 (Bankr.N.D.Tex.1986).

**5.** Rule 9011 states in pertinent part: "If a document is signed in violation of this rule, the court ... shall impose on the person who signed it, the represented party, or both, an appropriate sanction...."

were calculated, nor how fees and expenses were caused by the conduct of the party sanctioned, the award cannot be affirmed.

4. *Whether the sanctions imposed and expenses reimbursed as to McClain, Brown, and Keeney were reasonable?*

Rule 9011, like Rule 11, specifically permits the bankruptcy court to order a party who violates Rule 9011 to pay his opponent "the *reasonable expenses* incurred because of the filing of the document, including a reasonable attorney's fee." (Emphasis added.) In the context of Rule 11, the Fifth Circuit has interpreted this language to mean that the fees and expenses reimbursed must "(1) be found to have been caused by a violation of Rule 11, and (2) be found to be reasonable." *Thomas,* 836 F.2d at 878–79. The sanctions awarded must be tempered with the Circuit Court's mandate that the *primary* objective of sanctions is to deter, not to compensate. *Id.* at 881. Hence, "the relevant considerations become the conduct and resources of the party to be sanctioned." *Id.*

The bankruptcy court's November 17, 1987 order imposing sanctions on McClain, in the amount of $141,660.00, on Keeney, in the amount of $28,332.00, and on Brown, in the amount of $18,888.00, provides no explanation of how these awarded amounts were calculated. Nor does the order state how the sanctions awarded in these amounts were *caused* by the Appellants' respective violations of Rule 9011 and section 363(c)(2). Nor are the total amounts awarded in any way apportioned between the Rule 9011 violation and the section 363(c)(2) violation. The bankruptcy court's brief order simply notes that McClain, Brown, and Keeney, are responsible for the bad-faith filing of Midwest's bankruptcy petition and for the unauthorized use of cash collateral. The total attorneys' fees and expenses found to have been reasonably incurred as a result of these violations are stated in a total amount awarded of $188,000.00. This total amount is then, ostensibly, borne by each offender on a pro-rata basis, 75% by McClain ($141,-660.00), 15% by Keeney ($28,332.00), and 10% by Brown ($18,888.00). No explanation of how or why the bankruptcy court derived at this pro-rata division is given.

Accordingly, the bankruptcy court's November 17, 1987 order imposing sanctions on McClain and Brown must be reversed and remanded for the entry of an adequate explanation, or findings, setting forth how the sanctions imposed were calculated (in sufficient detail to demonstrate how the figures were derived at) and stating how the fees and expenses reimbursed were caused by McClain's and Brown's respective violations of both Rule 9011 and Title 11, section 363(c)(2) of the Bankruptcy Code. As to Keeney, to the extent that the November 17 order imposes sanctions on him for the unauthorized use of cash collateral, it, too, is reversed and remanded for the entry of an adequate explanation, or findings, setting forth how the sanctions awarded were calculated and how the Movants incurred attorneys' fees and expenses because of Keeney's conduct in violation of section 363. For the reasons set forth in section 3(b) of this Opinion, this Court has vacated the bankruptcy court's award of any sanctions imposed on Keeney under Rule 9011 for the bad-filing of Midwest's bankruptcy petition.

If additional proceedings are necessary to fulfill the above mandate, they should be held on remand, so that the record on any further appeal in this matter provides and an adequate basis or justification for the amounts awarded or modified.

5. *If the sanctions order is reversed in part and vacated in part, is it necessary to consider the bankruptcy court's contempt order?*

The bankruptcy court's January 8, 1988 oral order of contempt [6] enforces the sanctions order and thus is dependent upon the sanctions order. Since the sanctions order is reversed in part and vacated in part, this Court need not consider the validity of contempt order. However, on remand, should the bankruptcy court find it necessary to enforce its sanctions order through contempt proceedings, this Court makes the following observations concerning the January 8, 1988 oral order. It is deficient in several respects.

■ First, the oral order was a hybrid of both civil and criminal contempt and was

---

**6.** The bankruptcy court's written orders for contempt are not discussed, as two similar written contempt orders were entered by the bankrupt-

cy court on January 17, 1988. From the record, it is impossible to determine which controls. *See supra* p. 359.

unusually prospective in nature. While it is true that Judge Tillman found that the Appellants had violated his November 17, 1988 order by failing to pay the sanctions by the date prescribed, December 7, 1987, the oral contempt order imposes a 10% *penalty* for failure to pay sanctions by 4:00 p.m. the day the oral order itself issued, January 8, 1988. This 10% penalty appears to be punitive, that is, it attempts to vindicate the authority of the bankruptcy court, rather than coerce compliance with its sanctions order. *See, e.g., Smith v. Sullivan,* 611 F.2d 1050, 1053 (5th Cir.1980). Thus, the January 8 oral order was a hybrid, at least, partly, an order for criminal contempt.

Its prospective nature likewise raises several due process concerns. The 4:00 p.m. deadline had not yet been violated,[7] nor had the Appellants been afforded the opportunity to show cause why the new deadline could not be complied with. McClain, whose 10% penalty would have been in excess of $5,000.00, was entitled to the opportunity to demand a jury trial regarding the enforcement of the criminal contempt order. *See, e.g., Union Tool Co. v. Wilson,* 259 U.S. 107, 110, 42 S.Ct. 427, 428, 66 L.Ed. 848 (1922); *Thyssen, Inc. v. S/S Chuen On,* 693 F.2d 1171, 1174 n. 4 (5th Cir.1982). Due process of law, in the prosecution of contempt, except of that committed in open court, requires that the accused be advised of the charges, have a reasonable opportunity to meet them by way of defense or explanation, and a hearing before an unbiased judge. *See, e.g., Cooke v. United States,* 267 U.S. 517, 537, 45 S.Ct. 390, 395, 69 L.Ed. 767 (1925). The bankruptcy court, of course, was powerless to issue a criminal contempt order. *See, e.g., Tele–Wire Supply Corp. v. Presidential Financial Corp., Inc. (In re Industrial Tool Distributors, Inc.),* 55 B.R. 746 (N.D.Ga.1985).

■■ Second, Judge Tillman's threat of imprisonment of the Appellants for nonpayment of the sanctions and penalty by January 13, 1988, could not withstand appellate review for the same procedural and substantive infractions. The threat of imprisonment was, at best, advisory. There had been no failure to comply with the January 8, 1988 order at the time imprisonment was threatened; the Appellants still had 5 days

to comply. The effect of the contempt order was to deprive the Appellants of their due process rights to notice and a hearing and an opportunity to explain and defend their actions *after* the alleged violation actually occurred. This is especially true in light of McClain's testimony at the January 8, 1988 hearing that he had no funds or assets with which to pay the sanctions imposed.[8] A court's power to impose coercive civil contempt is limited by the individual defendant's ability to comply. *See Badgley v. Santacroce,* 800 F.2d 33, 36 (2d Cir.1986).

■ Finally, the bankruptcy court ignored the provisions of Rule 9020 in the execution of the contempt proceedings below. Section (b) of Rule 9020 requires that notice of the contempt hearing be in writing and state "the essential facts constituting the contempt charged and describe the contempt as criminal or civil ..., allowing a reasonable time for the preparation of the defense." In this case, the bankruptcy court's boiler-plate notice order was filed on January 5th and mailed on January 6th, only two days before the contempt hearing. The notice order made no mention of the "essential facts constituting contempt," nor did it state whether the contempt alleged was "criminal or civil." Moreover, the two days notice given to the Appellants to prepare to defend the contempt allegations was unreasonable.

Rule 9020(c) also provides that when a contempt order is issued it becomes effective "10 days after service ... and shall have the same force and effect as an order of contempt entered by the district court *unless, within the 10 day period, the entity named therein serves and files with the clerk objections prepared in the manner provided in Rule 9033(b). If timely objections are filed, the order shall be reviewed as provided in Rule 9033."* Before the bankruptcy court sought to enforce its sanctions through civil or criminal contempt proceedings and the resultant January 8 order, compliance with the provisions Rule 9020 would certainly have been the preferred procedure, especially where current "case law in this area reflects great uncertainty regarding the authority of Article I Bankruptcy Court to adjudicate cases of civil contempt." *United States v. Revie,* 834 F.2d 1198 (5th Cir.1987). Rule

---

**7.** The Appellants, instead, sought a stay of the sanctions order in this Court.

**8.** McClain had been forced into Chapter 7 bankruptcy by his creditors.

9020, as it adopts Rule 9033 by reference, contemplates that a contempt order of the bankruptcy court may only be enforced when accepted by the district court after a de novo review of the record below and the development of additional evidence, if necessary.

In sum, the bankruptcy court erred in imposing sanctions on Keeney for the bad-faith filing of Midwest's bankruptcy petition when the evidence was uncontroverted that Brown signed the petition, not Keeney. To the extent that the November 17, 1987 order imposes sanctions on Keeney for the bad-faith filing of the petition in violation of Rule 9011, it is vacated. To the extent that the bankruptcy court's November 17, 1987 order imposes monetary sanctions upon Keeney for the unauthorized use of cash collateral in violation of section 363(c)(2), it is reversed and remanded for further proceedings not inconsistent with this opinion.

While the record below provides an adequate basis for the imposition of monetary sanctions upon both McClain and Brown for violations of Rule 9011 and section 363(c)(2) and upon Keeney for conduct in violation of section 363(c)(2), the bankruptcy court's November 17, 1987 order fails to explain (1) how the sanctions imposed were calculated and apportioned, and (2) how the amount awarded as sanctions, presumably reimbursement for reasonable fees and expenses, was caused by the respective violations of McClain, Brown, and Keeney. As the basis for the amount of monetary sanctions awarded cannot be readily discerned from the record thus developed, the November 17, 1987 order, to the extent that it imposes sanctions on McClain and Brown for Rule 9011 violations, and on McClain, Brown, and Keeney for section 363(c)(2) violations, must be reversed and remanded for further proceedings not inconsistent with this Opinion.

Accordingly, the bankruptcy court's November 17, 1987 sanctions order is VACATED IN PART, REVERSED IN PART, AND REMANDED. All other relief now pending in this appeal not expressly granted is DENIED.