**In re AG SERVICE CENTERS, L.C., Debtor.**

**Bankruptcy No. 99–30597.**

United States Bankruptcy Court, W.D. Missouri, Southwestern Division.

Sept. 30, 1999.

---

J. Kevin Checkett, Carthage, MO, for debtor.

## MEMORANDUM OPINION AND ORDER

JERRY W. VENTERS, Bankruptcy Judge.

The issue before the Court in this voluntary Chapter 11 case is whether the Court

should appoint a Chapter 11 Trustee, pursuant to 11 U.S.C. § 1104, and thereby remove the Debtor–in–Possession, Ag Service Centers, L.C., as its own trustee. An emergency motion seeking the Debtor–in–Possession's removal as trustee was filed by the Debtor's major secured creditor, Mercantile Bank of Western Missouri, on September 1, 1999. The Court held two hearings on this matter: a telephonic hearing on September 8, 1999, at the Federal Courthouse in Kansas City, Missouri, and a hearing on September 23, 1999, at the Federal Courthouse in Joplin, Missouri. Upon consideration of the pleadings, evidence, oral arguments, and the Court's independent research, the Court concludes that the Debtor–in–Possession's repeated failure to obey the orders of this Court and comply with the dictates of the Bankruptcy Code warrants the appointment of a Chapter 11 trustee. Accordingly, the Court will grant Mercantile Bank's motion and will order the removal of the Debtor–in–Possession as the Chapter 11 trustee and will direct the United States Trustee to appoint a new trustee.

This Court has jurisdiction in these proceedings pursuant to 28 U.S.C. § 1334. This Memorandum Opinion and Order constitutes the Court's findings of fact and conclusions of law as required by Bankruptcy Rule 7052.

## FACTUAL BACKGROUND

The Debtor–in–Possession, Ag Service Centers, L.C., ("Debtor"), is a Missouri limited liability corporation that operates two farm supply retail stores in southwest Missouri, one store in Lockwood and another in Pierce City. The stores primarily sell fertilizer and agricultural chemical products. A voluntary Chapter 11 petition

was filed by the Debtor on July 14, 1999, and an Order for Relief was entered.

Although virtually all of the Debtor's assets, including inventory, equipment and accounts receivable, were subject to the security interests and liens of Mercantile Bank of Western Missouri ("Mercantile" or "Bank"), the Debtor did not file at the outset a motion for use of cash collateral pursuant to 11 U.S.C. § 363. However, on July 27, 1999, thirteen days after the Chapter 11 petition was filed, the Bank filed a Motion to Prohibit Use of Cash Collateral and Request for Section 363(c)(4) Relief, in which the Bank asked the Court to prohibit the Debtor from using its cash collateral, to require the Debtor to segregate all cash collateral post-petition in a separate, interest-bearing account, and to provide the Bank with a full and prompt accounting of all cash collateral in the Debtor's possession since the filing. The Debtor responded, in effect, to Mercantile's Motion by filing, on August 3, 1999, a Motion for Emergency and Final Authorization of Use of Cash Collateral, in which it stated that the Debtor required cash to operate its two stores and that the only way to generate the needed cash was through the sale of inventory and the collection of its accounts receivable, both of which were subject to the liens of Mercantile Bank.[1]

The Court held an expedited hearing on the Debtor's Emergency Motion three days later, on August 6, 1999, and allowed counsel for the Debtor to participate by telephone. During that hearing, counsel for the Debtor sent to the Court, by facsimile machine, a proposed 60–day cash budget. The budget projected weekly income, from cash sales and payments on accounts receivable, of approximately $31,-

---

1. Debtor's counsel explained that he did not file a motion for use of cash collateral immediately because he believed that he had an agreement and understanding with the Bank's nonbankruptcy attorney concerning the use of cash collateral. However, an agreement (drafted by Debtor's counsel) had not been executed when the Bank employed present

bankruptcy counsel. The Court has no reason to disbelieve Debtor's counsel's account of what took place and notes that the Debtor's failure to promptly file a cash collateral motion is not a factor in the Court's decision; what concerns the Court most is what has occurred throughout the short life of this Chapter 11 proceeding, as is detailed *infra*.

400.00 for the first four weeks and $36,-300.00 for the next five weeks. It also indicated that the Debtor had a beginning cash balance of $34,517.00. The proposed budget then itemized 13 line items of expenses, and projected that the weekly expenses would range from a low of $21,-984.00 to a high of $50,304.00. The budget projected that the Debtor would have an ending cash balance at the end of the 60 days of $53,547.00.

At the conclusion of this emergency hearing, the Court entered a preliminary order in which it authorized the Debtor to make limited use of the cash collateral, in accordance with the budget proposed by the Debtor. The Debtor was given permission to exceed any expense line item on the budget by no more than 10 percent; if any item was going to be exceeded by more than 10 per cent, Court approval was to be obtained. The preliminary order required the Debtor (a) to provide weekly reports to the Bank on each Friday showing all income and expenses for the preceding 7 days, (b) to provide the Court and the Bank with a full accounting of the use of all post-petition cash collateral from the filing date to August 6, 1999, (c) to establish a segregated cash collateral account at Mercantile and to deposit in that account each week all amounts of cash in excess of the authorized expenses for that week, (d) to provide the Bank with proof of insurance coverage, and (e) to immediately establish a Debtor–in–Possession operating account. The preliminary order granted Mercantile a replacement lien on post-petition inventory and accounts receivable and a superpriority administrative expense claim under 11 U.S.C. § 364(c)(1) and 11 U.S.C. § 507(b) as adequate protection and authorized Mercantile to inspect the Debtor's premises and books and records upon 24 hours' notice.

On August 26, 1999, the Court held hearings in Joplin, Missouri, on the Debtor's and the Bank's competing motions. At that hearing, evidence was adduced that the Debtor had not been providing the weekly income and expense accounting to the Bank on a timely basis; that no deposits of excess cash collateral had been maple in the segregated cash collateral account; that the Debtor had, post-petition, transferred $30,500.00 to its president, Michael Loy ("Loy"), in repayment of pre-petition advances (loans) that Loy had made to the Debtor; that the Debtor had used cash collateral to make at least one mortgage payment on a store property without permission to do so; and that Debtor's counsel had been paid, post-petition, $5,655.30 of his $10,000.00 retainer fee, without the approval of the Court. Despite these problems, the Court on August 30, 1999, entered an Interim Order authorizing the Debtor to continue with the use of cash collateral, on the conditions that (a) all excess cash collateral in the Debtor's possession be deposited in the segregated cash collateral account by noon on August 27; (b) Loy reimburse the bankruptcy estate the $30,500.00 received from the Debtor no later than noon on September 10; (c) the Debtor not make further mortgage payments without the Court's approval; and (d) Debtor's counsel file an application within 5 days requesting approval for the post-petition payment of a portion of his retainer fee.

Two days later, on September 1, Mercantile filed its Emergency Motion for Appointment of Chapter 11 Trustee and Assessment of Sanctions. As grounds for the removal of the Debtor–in–Possession as the Chapter 11 trustee, Mercantile alleged that the Debtor had failed to timely provide its weekly reports to the Bank, that the post-petition accounting provided by the Debtor was inadequate in certain respects, that the Debtor had exceeded the authorized expenditures on its proposed budget by as much as 38 per cent, that the Debtor had failed to deposit as much as $34,144.47 of excess cash collateral in the segregated account, and that the Debtor had made unauthorized post-petition transfers and payments (utilizing the $30,500.00

that had been advanced to the Debtor by Loy).

The Debtor filed a response to this Emergency Motion on September 9 in which it asserted that, for the most part, the Debtor had complied with the Court's previous Orders or that it would comply with them on a timely basis. The Debtor also asserted that there was confusion as to what was meant by "excess income" in the Court's Interim Order of August 30, but that, based on the Debtor's understanding of what that term meant, there was no excess cash collateral that should have been deposited in the segregated cash collateral account.

On September 10, the Court conducted a telephone conference with counsel for the Debtor and the Bank concerning the issues raised in the Bank's Emergency Motion. After hearing the arguments of counsel, the Court announced that it would not remove the Debtor–in–Possession as the Chapter 11 trustee at that time, but that the Court would hear evidence on the Emergency Motion on its regular docket in Joplin on September 23. The Court advised counsel for the Debtor that the Court expected Loy to comply with the Court's previous Order and deposit the $30,500.00 in the Debtor's account by noon of that day. The Court also advised counsel that, based on the Debtor's response to the Emergency Motion, it appeared that there was at least $13,145.75 in "excess cash" that should have been deposited in the segregated cash collateral account, and that the Court expected that amount to be deposited. Finally, the Court noted that the Debtor should file an appropriate motion for approval of the expenses paid that were in excess of the budgeted amounts, and that that request would be heard on September 23, along with the other pending matters. Such a motion, seeking approval, after the fact, for $15,000.00 in inventory purchases, was filed on September 16.

At the evidentiary hearing on September 23, the Court learned:

(1) That the Debtor had issued a check on September 13 in the amount of $13,-145.75 for deposit in the segregated cash collateral account, but that that check had been returned for insufficient funds. Although Mercantile Bank notified Loy on September 20 that the check had bounced, Loy had not taken any steps to replace the check or deposit readily available funds in the segregated account.

(2) That Loy had not yet repaid the $30,500.00, which was to have been repaid by September 10. Instead, Loy advised the Court that he was still trying to obtain a loan for that amount so that the money could be repaid to the bankruptcy estate.

(3) That no money whatsoever had been deposited in the segregated cash collateral account for any week of post-petition operations.

(4) That the Debtor was continuing to use a non-Debtor-in-Possession bank account for the operations of its retail store at Lockwood. Loy said that the Debtor's authorized depository was to blame for the problem.

(5) That the Debtor had not filed any monthly operating reports with the Court, although two reports should have been filed (for July and August). Loy testified that the reports had not been filed because his computers could not use the software provided by the U.S. Trustee's office, a problem of which Loy had been aware since late in July.

(6) That the Debtor has not employed an accountant to provide accounting services to the Debtor during the bankruptcy proceedings, although the Debtor is accruing $750.00 a month for accounting expenses. The Court had previously entered an Order denying the Debtor's request to employ Loy & Associates, an accounting firm owned by Michael Loy, the president of the Debtor and a licensed certified public accountant in the State of Kansas.

(7) That the Debtor had, at least informally, retained the services of a profes-

sional to assist the Debtor in obtaining refinancing for its business or to assist in the sale of its assets, and that the Debtor had failed to seek and obtain the Court's approval for the employment of such a professional, as required by 11 U.S.C. § 327.

With these facts in mind, we turn to a consideration of the legal bases for removal of a Debtor–in–Possession as a Chapter 11 trustee.

## DISCUSSION

1. The Appointment of a Chapter 11 Trustee.

■ The appointment of a Chapter 11 trustee is considered an extraordinary measure. *Petit v. New England Mortgage Services Inc. (In re Petit)*, 182 B.R. 64, 69 (D.Me.1995). "The presumption in chapter 11 cases is that 'current management' is generally best suited to orchestrate the process of rehabilitation for the benefit of creditors and other interests of the estate." *Id.* at 68–69. The party seeking the removal of a debtor-in-possession and appointment of a Chapter 11 trustee has the burden of establishing that the appointment is warranted under 11 U.S.C. § 1104. *Id.* In this case, the Court find's that the movant, Mercantile Bank, has met its burden.

Section 1104 provides, in pertinent part: (a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee—

(1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor;

or

(2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

11 U.S.C. § 1104.

The Debtor's repeated and continued failure to comply with the orders of this Court and the dictates of the Bankruptcy Code would warrant the appointment of a trustee under § 1104(a)(1) or (2), inasmuch as compliance with Court orders and the Code is *a fortiori* in the interests of creditors and the estate. However, the character of the Debtor–in–Possession's conduct lends itself better to analysis under § 1104(a)(1).

■ Section 1104(a)(1) does not specifically list "noncompliance with court orders" or "failure to comply with the Bankruptcy Code" as causes for the appointment of a trustee, but such conduct clearly falls within the scope circumscribed by the statute—either as a "similar cause" or as a permutation of "incompetence, or gross mismanagement." *See In re Caroline Desert Disco, Inc.*, 5 B.R. 536, 537 (Bankr.C.D.Cal.1980) ("[T]he current management's failure to comply with the Court's rules on insurance, operating controls, and reports to the U.S. Trustee constitutes incompetence or gross mismanagement, justifying ... appointment of a Trustee."). And if the Court determines that there is cause, which it has in this case, the appointment of a trustee is mandatory. *See Savino Oil & Heating Co.*, 99 B.R. 518, 524 (Bankr.E.D.N.Y. 1989).

For the sake of brevity, the Court will not repeat each item in the list of actions taken or, as the case may be, not taken by the Debtor in violation of the Court's orders and the Bankruptcy Code. Those have been detailed above. Suffice it to say, the Court was appalled when it

learned at the September 23 hearing that the majority of its orders, both written and those made directly to Loy in open court, had been ignored with impudence.[2] The Court does pause to note, however, a few things that the Court found particularly troubling about this case.

First of all, the fact that Loy is a certified public accountant makes his conduct especially inexcusable. He should have known how to file the weekly reports and should have been able to do so without any delay. Additionally, Loy's excuse that he could not file monthly operating reports with the United States Trustee because of a software problem defies credulity; Loy knew about the supposed software problem in late July and only took steps to remedy the situation when, by chance, he saw Jerry Phillips, Attorney Advisor to the United States Trustee, at the September 23 hearing. As an accountant, Loy should be familiar with accounting software and be able to quickly identify or remedy any problems that might arise with the compilation of monthly reports. His failure to do so can only be attributed to his deliberate choice to ignore the Court's orders and proceed in any fashion he pleases, i.e. setting his own deadlines, repeatedly ignoring the budget he proposed himself, and basically carrying on business as if he had never filed bankruptcy.

■ The second item of mention, which flows from the first, is that Loy's failure to comply with Federal Rule of Bankruptcy Procedure 2015(a)(3) and Local Rule 2015–2(c), which require the debtor-in-possession to file monthly reports, and his failure to timely submit the weekly reports as required by Court Order, deprives the Court and the United States Trustee's office (as well as the Bank) of critical information the Debtor. *See In re Savino Oil & Heating Co., Inc.,* 99 B.R. 518, 526

(Bankr.E.D.N.Y.1989) (*"Savino "*). The necessity of filing timely reports cannot be overstated: "[O]ne of the most fundamental and crucial duties of a debtor-in-possession upon the filing of a Chapter 11 petition is to keep the Court and creditors informed about the nature, status and condition of the business undergoing reorganization.... Open, honest and straightforward disclosure to the Court and creditors is intrinsic to the entire reorganization process and begins on day one, with the filing of the Chapter 11 petition." *Id. See also, Petit,* 182 B.R. at 69 (citing *Savino, supra.*); *In re Horn & Hardart Baking Co.,* 22 B.R. 668 (Bankr.E.D.Pa.1982) (noting the debtor-in-possession's duty to file records and operating reports). The Court's dismay with Loy's cavalier attitude toward his reporting duties is exacerbated by the fact that Loy is a CPA who should be able to compile such reports with relative ease.

The Court has not reached its conclusion to order the appointment of a Chapter 11 Trustee here without a great deal of thoughtful consideration. As previously noted, this is an extraordinary measure, so it must not be undertaken lightly. In the typical business reorganization case, the debtor will remain in possession and the pre-Chapter 11 management will continue to manage the debtor's affairs, the assumption being that current management is generally best suited to orchestrate the process of rehabilitation for the benefit of creditors as well as the debtor. *Savino,* 99 B.R. at 524. However, while receiving the benefits of the Bankruptcy Code, a Chapter 11 debtor also assumes numerous obligations and responsibilities, *id.* at 526, and the Debtor–in–Possession has failed to properly shoulder the obligations and responsibilities in this case.

---

**2.** The Court does not intend to intimate that the Debtor's attorney, Kevin Checkett, is responsible for Loy's noncompliance. The Court has found Mr. Checkett to be an experienced and skillful attorney knowledgeable in bankruptcy law and fully capable of handling

a Chapter 11 case. It is obvious to the Court that Mr. Checkett has attempted to obtain Loy's compliance with Court orders and that Loy's conduct car, only be attributed to his own willful disobedience.

In view of the unusual circumstances here, the Court would further observe that it expects the trustee appointed by the U.S. Trustee to keep the Debtor's principal, Mr. Loy, fully informed on the debtor's operations, so that Loy may continue with his efforts to refinance or sell the business. This can be accomplished by the newly appointed trustee providing copies of all operating reports and the like to Loy and Debtor's counsel. The Court also will expect the bank to cooperate fully with the trustee and Debtor's counsel in the operation of the businesses and the development of a Chapter 11 Plan, whether it be reorganization or liquidation.

For the reasons set out above, the Court concludes that Mercantile has satisfied its burden in establishing that the appointment of a Chapter 11 trustee is warranted under § 1104(a).

2. Sanctions.

In addition to the appointment of a Chapter 11 trustee, Mercantile has also requested that it be awarded the attorneys' fees and costs incurred in connection with its Emergency Motion and that sanctions be imposed on the party responsible for the misuse of cash collateral. Loy is clearly the party responsible for the misuse of cash collateral and, as Counsel for Mercantile correctly points out, sanctions can be imposed on the party responsible for such misuse. *See Mercantile National Bank at Dallas v. Aerosmith Denton Corp. (In re Aerosmith Denton Corp.)*, 36 B.R. 116, 119–20 (Bankr.N.D.Tex.1983) ("[P]roper sanctions can be imposed against those responsible for use of cash collateral after a Title 11 case has been filed where there has been no compliance with § 363(c)(2)."); *Midwest Properties No. Two v. Big Hill Investment, Co., Inc.*, 93 B.R. 357, 362–63 (N.D.Tex.1988) (imposing sanctions on corporate debtor's principal and his attorney for unauthorized use of cash collateral). *See* 11 U.S.C. § 105. In this case, the Court does not find that sanctions are warranted. However, we will award Mercantile its costs and reasonable attorneys' fees and order that this award be paid by Michael Loy personally.

Counsel for Mercantile, Jonathan A. Margolies, submitted an affidavit representing that the costs associated with the Emergency Motion were $282.72 and that the fees amounted to $4,438.00. The Court will award all of Mercantile's costs, but finds that $3,500.00 is a more reasonable estimation of reasonable fees in this matter. *First Deposit National Bank v. Cameron (In re Cameron)*, 219 B.R. 531, 542 (Bankr.D.Mo.1998) ("The court can act as its own expert regarding the reasonableness of attorney fees.").

Therefore, it is

**ORDERED** that Mercantile Bank's Emergency Motion for Appointment of Chapter 11 Trustee and Assessment of Sanctions is hereby GRANTED in part and DENIED in part. It is

**FURTHER ORDERED** that the Debtor–in–Possession, Ag Service Centers, L.C., is hereby removed as the Chapter 11 trustee and the United States Trustee is hereby directed to appoint a new trustee. It is

**FURTHER ORDERED** that Mercantile Bank's request for sanctions is DENIED. It is

**FURTHER ORDERED** that Mercantile Bank be awarded $282.72 in costs and $3,500.00 in attorneys' fees, said costs and fees to be paid to the Bank by Michael Loy personally within 20 days of the entry of this Order. It is

**FURTHER ORDERED** that Loy is and will be permitted to continue his efforts to sell the assets of the Debtor, obtain financing, or conduct similar activities, and the new Chapter 11 trustee shall make reasonable efforts to cooperate with Loy in his efforts, including sending him copies of all weekly and monthly operating reports.

**SO ORDERED.**