In re **VILLA MADRID**, a California limited partnership, Debtor.

**BLAKE, BARNETT, MILMAN & BELL, INC.**, a professional corporation, Appellant,

v.

Gerald T. **CHALMERS** and Josephine M. Rudine, Appellees.

BAP No. CC–89–1333 VJMe.
Bankruptcy No. SA 88–07693 JW.
Adv. No. M9–0034 JW.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Nov. 14, 1989.

Decided Feb. 26, 1990.

**920**

Rose Pyle, Jennings, Engstrand & Henrikson, San Diego, Cal., for appellant.

Lee Cohen, Rutter, O'Sullivan, Greene & Hobbs, Inc., Los Angeles, Cal., for appellees.

Before VOLINN, JONES and MEYERS, Bankruptcy Judges.

## OVERVIEW

VOLINN, Bankruptcy Judge:

The debtor filed a bankruptcy in Texas, which was dismissed on August 3, 1988, by stipulation between the debtor and the appellees. The appellant, Blake, Barnett, Milman & Bell, Inc., is the law firm which represented the debtor in filing a second bankruptcy case in California approximately five months later on December 30, 1989. The California bankruptcy court found that the second case was filed in bad faith and dismissed it, assessing monetary sanctions against the debtor and the appellant under Bankruptcy Rule 9011.[1] The appellant appeals from the award of sanctions. We affirm.

## FACTS

The debtor is a limited partnership whose principal asset was a 172–unit apartment complex in Brownsville, Texas. The debtor purchased the apartments in 1979 from the appellees for $3,025,000, consisting of $625,000 in cash and two $1,200,000 promissory notes secured by the apartments. The two notes "wrapped" a senior deed of trust in the amount of $1,600,000.

The debtor encountered financial difficulties in October 1986, eventually filing a chapter 11 petition that year in Texas. That case was dismissed by a stipulated order ("the Dismissal Order") which was entered on or about August 1, 1988, after

---

**1.** All references to Rules refer to the Bankruptcy Rules unless otherwise indicated.

Rule 9011 provides in pertinent part:

The signature of an attorney or a party constitutes a certificate that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief formed after reasonable inquiry it is well-grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass, to cause delay, or to increase the cost of litigation.... If a document is signed in violation of this rule, the court on motion or on its own initiative, shall impose on the person who signed it, the represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee.

the debtor had filed a plan and disclosure statement, but without any plan having been confirmed. The Dismissal Order provided that the debtor would make certain payments to the appellees and on senior encumbrances. It provided further that in the event of the debtor's default the appellees would "have the absolute right to post the subject property for foreclosure in December, 1988 and to subsequently foreclose on the subject property by Trustee's Sale in January, 1989." Finally, the Dismissal Order provided that the case was "dismissed with prejudice."

The debtor asserts that it agreed to the Dismissal Order in reliance on the representations of the apartments' management company that it could sell or refinance the apartments.

The debtor defaulted under the terms of the Dismissal Order, and the appellees notified the debtor of the default on approximately November 22, 1988. On approximately December 12, 1988, the appellees notified the debtor that the apartments would be sold at a foreclosure sale on January 3, 1989.

On Friday, December 30, 1988, the debtor met with the appellant for the first time to engage the appellant as legal counsel to file this bankruptcy case in California. The appellant determined that the apartments were scheduled to be sold at the foreclosure sale the next business day, Tuesday, January 3, 1989, and therefore that there was limited time to verify the facts and procedural history behind the bankruptcy case that the debtor was proposing to file.

According to the appellant's uncontroverted declarations, the debtor informed the appellant that the property was generating net profits monthly. The appellant then telephoned the debtor's former Texas counsel, who corroborated the information given by the debtor concerning the economic viability of the apartments. The appellant also specifically inquired whether anything about the dismissal of the Texas bankruptcy would preclude a new filing in California, and specifically whether § 109 [2] was implicated, and received negative replies. Finally, the appellant telephoned the debtor's California state court counsel and received a positive reference as to the debtor's character and credibility. The appellant then agreed to represent the debtor.

The debtor then telephoned the appellees' Texas counsel to inform them of the intention to file a bankruptcy petition that day, and were informed of the appellees' opinion that such a filing was inconsistent with the Dismissal Order. The appellant then obtained a telecopied facsimile of the Dismissal Order, and although there was not sufficient time to do extensive research on its effect, concluded that it did not preclude the filing of a new bankruptcy case in California. Accordingly, the appellant filed a petition on behalf of the debtor in the California bankruptcy court.

The appellees proceeded with the foreclosure sale as scheduled on January 3, 1989. The appellants contend that a conformed copy of the filed petition was telecopied to the office of the appellees' Texas counsel on December 30, while the appellees contend that their counsel did not receive notice of the bankruptcy until after the foreclosure sale on January 3, 1989.

In the ensuing days, the appellants and counsel for the appellees had conversations concerning their respective interpretations of the effect of the Dismissal Order on the debtor's right to file the pending bankruptcy. The appellants filed a declaratory action on behalf of the debtor to determine that issue, and the appellees filed a motion to dismiss the case, for *nunc pro tunc* relief from stay to validate the foreclosure

---

**2.** Section 109 provides in pertinent part:
(g) Notwithstanding any other provision of this section, no individual or family farmer may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if—
(1) the case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case; or
(2) the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title.

sale, and for sanctions against the debtor and the appellant.

The bankruptcy court ultimately held a consolidated hearing on those matters. The parties filed several declarations, but no live testimony was taken. The court found that the California bankruptcy case was filed in bad faith and therefore granted the appellees' motions for dismissal and *nunc pro tunc* relief from stay.

The court also assessed sanctions against the appellant and its client (the debtor) in the amount of $15,509.70. The appellant appealed the sanctions award against it. No appeal was taken from the sanctions award against the debtor, the dismissal of the case, or the granting of relief from stay *nunc pro tunc*.

### ISSUES

1. Did the bankruptcy court properly determine that the appellant violated Rule 9011 by filing the petition in the California bankruptcy case?

2. Was the amount of the sanction award proper?

### LEGAL STANDARD FOR IMPOSITION OF SANCTIONS

Rule 9011 provides that an attorney's signature on a pleading constitutes a certificate that to the best of the attorney's knowledge, information, and belief formed after reasonable inquiry, the pleading is (1) well grounded in fact, (2) warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and (3) not interposed for any improper purpose, such as to harass, cause delay, or increase litigation costs.

▆▆▆ The rule should not be applied so as to "chill an attorney's enthusiasm or creativity in pursuing factual or legal theories." *In re Lewis,* 79 B.R. 893, 896 (9th Cir. BAP

1987), citing *Golden Eagle Dist. Corp. v. Borroughs Corp.,* 801 F.2d 1531, 1536–37 (9th Cir.1986), which itself was citing 97 F.R.D. at 199. Thus the relevant inquiry is whether "after reasonable inquiry, a competent attorney could not form a reasonable belief that the [pleading] is well grounded in fact and is warranted by existing law or modification or reversal of existing law." *Lewis* at 896, citing *Eastway Const. Corp. v. City of New York,* 762 F.2d 243, 254 (2nd Cir.1985) and *Golden Eagle* at 1537.

In summary, the question is not whether the second bankruptcy petition was filed in bad faith, but rather whether the appellant knew, or after reasonably diligent inquiry should have known, that the filing of the petition would be in bad faith.

### STANDARD OF REVIEW

[2] Whether specific conduct violated Rule 9011 is a question of law that is reviewable *de novo*. *Hudson v. Moore Business Forms, Inc.,* 836 F.2d 1156, 1159 (9th Cir.1987); *Zaldivar v. City of Los Angeles,* 780 F.2d 823, 828 (9th Cir.1986); *In re Lewis,* 79 B.R. 893, 895 (9th Cir. BAP 1987). The bankruptcy court's factual determinations stand unless they are clearly erroneous. *Hudson* at 1156; *Zaldivar* at 828. The amount of the sanctions is reviewed for an abuse of discretion. *Hudson* at 1156; *Zaldivar* at 828.

### DISCUSSION

▆▆▆ In its written findings of fact and conclusions of law, the bankruptcy court found that the appellant's filing of the California bankruptcy petition "was a knowing, intentional and clear violation of the dismissal with prejudice of the Texas Bankruptcy Case as set forth in the Settlement and Compromise Agreement and Order of Dismissal."[3] The court then concluded that

---

**3.** We note that there is some doubt as to a bankruptcy court's authority to enjoin a debtor from filing a subsequent bankruptcy. *See In re Taylor,* 77 B.R. 237, 240 (9th Cir. BAP 1987) (in dicta stating that "a court may not enter an order enjoining a debtor from refiling bankruptcy."). The appellees cite a case decided under the repealed Bankruptcy Act for the proposition

that the Texas court had the power to enjoin a future bankruptcy filing. *In re Springpark Associates,* 623 F.2d 1377 (9th Cir.1980). It appears, however, that § 349(a), which is consistent with *Taylor* and not *Springpark,* superceded inconsistent caselaw decided under the Act. We do not reach this issue, however, because we affirm the bankruptcy court's implicit finding that the

sanctions should be assessed against the appellant "based upon the bad faith filing of the Debtor's December 30, 1988, Chapter 11 petition...."

The bankruptcy court thus at least implicitly found that given the circumstances surrounding the Texas dismissal and the California filing, the appellant knew or should have known when it filed the second petition on the debtor's behalf that the second petition was filed in bad faith. That finding is supported by the record.

The debtor initially filed in Texas, where its principal assets are located. After protracted proceedings in which no plan was confirmed, the debtor and the appellees reached an agreement, which was embodied in the stipulated Dismissal Order. Pursuant to that agreement, the bankruptcy case was dismissed and the appellees agreed to delay foreclosure for approximately five months to give the debtor a final opportunity to sell the apartments. During that time the debtor was to make specified payments to the appellees and on encumbrances against the apartments, in order to protect the appellees' interest in the apartments. At the end of the five-month period, the appellees were to have the right to proceed with their foreclosure sale.

Although the appellant makes much of the lack of specificity in the "dismissed with prejudice" language, the parties' agreement clearly contemplates that the five-month period was to be the debtor's last chance to avoid foreclosure, and that the debtor would not refile at the end of the five-month period merely to delay the foreclosure further. The refiling in California was clearly an effort to avoid honoring the parties' agreement, and the intent of the Texas court's order embodying that agreement.

The appellant raises the debtor's assertions concerning changed market conditions and the apartment manager's infidelity as justifications for setting aside the

agreed deadline and giving the debtor additional time to try to sell the apartments. The Texas bankruptcy court, which was familiar with the facts of the case as well as the local market conditions, was the appropriate forum to consider any changed circumstances. The debtor, however, elected to engage new counsel and refile in a distant forum at the last possible moment before the foreclosure sale. One can infer that the debtor's purpose was to avoid the court that was in the best position to evaluate the merits of the debtor's assertions, and to impede the appellees' efforts to conduct the foreclosure sale to which the debtor had agreed five months earlier. This constitutes bad faith on the part of the debtor.

The question before us now, however, is not the debtor's bad faith, but what the appellant knew or should have known of the circumstances establishing the debtor's bad faith at the time of the California filing. The record reflects that before filing that petition, the appellant knew that the debtor's principal asset was real property located in Texas, that the debtor and the apartments were the subject of a Texas Bankruptcy case dismissed only five months earlier, and that the changed circumstances alleged by the debtor could have been raised before the Texas court. The appellant knew that the debtor sought to engage new counsel and file a bankruptcy petition in California to stay a Texas foreclosure sale scheduled for the next business day, even though the debtor already had access to both Texas counsel and a Texas bankruptcy court which were well versed in the facts of the case, and through which appropriate relief could have been sought. Finally, the appellant had obtained a copy of the Dismissal Order which demonstrated that the debtor had agreed to the dismissal of the Texas case under conditions which at least raised a question as to the good faith of refiling on the eve of foreclosure.[4]

Under the circumstances, and in light of the conversations with Texas counsel for

appellant knew or should have known that the second filing was in bad faith under the circumstances, regardless of whether the Texas bank-

ruptcy court had the authority to issue an order precluding a subsequent filing.

**4.** Although the appellant stresses the late hour at which it received that copy, there is no appar-

the debtor and the appellees, the appellant could only have concluded that the debtor's primary purpose in refiling in a new venue, before a new court, using new counsel, on the last day before the Texas foreclosure sale, was to avoid the effects of the stipulated Dismissal Order, and thereby to delay the appellees in their efforts to obtain relief from stay in time to proceed with the scheduled foreclosure sale, without seeking modification of the Dismissal Order in the court familiar with the history of the case.

## CONCLUSION

The importunities of a desperate client do not relieve an attorney of the affirmative duty of reasonable inquiry imposed by Rule 9011. The evident warning flags and the inadequate time available to make such inquiry should have impelled appellant to consider the ever-present option of declining a questionable engagement. The court properly held that the appellant had to make that judgement call in the context of Rule 9011.

There was sufficient evidence to support the court's finding that under the circumstances, the appellant knew, or after reasonable inquiry should have known, that the second bankruptcy petition was filed in bad faith and for an "improper purpose, such as ... to cause delay." Rule 9011. We cannot hold that the court's finding was clearly erroneous. In view of that finding, the court properly concluded that the appellant's signature on the bankruptcy petition was a violation of Rule 9011, thereby warranting the imposition of sanctions.

The amount of the award was based on competent and detailed evidence submitted by the appellee. The order of the bankruptcy court awarding sanctions against the appellant in the amount of $15,509.70 is therefore AFFIRMED.

ent justification for the appellant's failure to contact opposing counsel or otherwise ascertain

the facts surrounding the prior dismissal earlier.