**In re RAINBOW MAGAZINE, INC., Debtor.**

**Craig E. CALDWELL, Appellant,**

v.

**Timothy J. FARRIS, Trustee, Unified Capital Corporation, Robert P. Mosier, Chapter 11 Trustee, Appellees.**

**BAP Nos. CC–90–1829–POV, CC–90–1835–POV.**
**Bankruptcy No. SB 89–04627 DN.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on Feb. 20, 1991.

Resubmitted on Oct. 30, 1991.[1]

Decided Feb. 13, 1992.

---

1. On September 11, 1991, we issued our Opinion and judgment in these appeals. By an order filed September 23, 1991, we withdrew our Opinion and vacated our judgment. By an order filed September 30, 1991, we vacated the prior submission date of these appeals and directed the parties to file supplemental briefs addressing the authority of the bankruptcy court to impose sanctions under its inherent power.

David J. Fischer, Chicago, Ill., for appellant.

Theodore Graham, San Diego, Cal., for appellees.

Before PERRIS, OLLASON and VOLINN, Bankruptcy Judges.

## AMENDED OPINION [2]

PERRIS, Bankruptcy Judge:

The bankruptcy court assessed sanctions against the appellants Rainbow Magazine, Inc. ("the debtor") and Craig E. Caldwell, its principal, pursuant to Bankruptcy Rule 9011 as a result of their conduct in filing the petition. The debtor (BAP No. CC–90–1835) and Caldwell (BAP No. CC–90–1829) filed these timely appeals.[3] We AFFIRM the bankruptcy court's decision to impose sanctions against the debtor, but REVERSE the imposition of sanctions against Craig Caldwell. We REMAND for a determination of the sanction award, if any, against Caldwell for his signature on the false statement of affairs and for a redetermination of the amount of sanctions against the debtor.

---

**2.** This Amended Opinion supersedes our prior Opinion filed on September 11, 1991 and withdrawn on September 23, 1991.

**3.** By an order entered December 28, 1990, the Panel consolidated these two appeals.

## FACTS [4]

The debtor was formed in September of 1987 and immediately thereafter conducted a short-lived business. Caldwell, the sole shareholder and chief executive officer of the debtor, subsequently purchased the stock of the debtor in 1987. From that time until February of 1989, the debtor conducted no business, owned no property, had no employees, and had no business records other than a checking account opened in January of 1989. The only other officer of the debtor, its president, the Reverend Sam Steel, was not involved in any business operations of the debtor. Caldwell has been involved as a principal in several other entities that have gone through bankruptcy.

The debtor's primary asset at the time it filed its bankruptcy petition was a 384 unit apartment project in Palm Desert, California ("the property"). Prior to February of 1989, One Quail Place ("One Quail"), a limited partnership controlled by Dennis Martin, owned the property as its primary asset. The property was encumbered by a first deed of trust in favor of the appellee, Unified Capital Corp. ("Unified") securing a debt in the approximate sum of $17,000,000 and a second deed of trust in favor of Gibraltar Federal Savings and Loan Association ("Gibraltar") securing a note in the original principal amount of $2,000,000. Mr. Martin was a partner of Caldwell in other enterprises.

One Quail filed a Chapter 11 petition in October of 1987. In August of 1988, Gibraltar obtained relief from the automatic stay in the One Quail bankruptcy and subsequently scheduled a sale under the trust deed for February 24, 1989. In November of 1988, Unified obtained relief from the automatic stay in the One Quail bankruptcy and subsequently commenced proceedings in state court for, *inter alia*, foreclosure and appointment of a receiver. Also in

---

**4.** The majority of these facts are taken from the bankruptcy court's Memorandum of Decision and the appellee's opening brief. Although the appellants dispute the relevance of many of these facts to a determination of sanctions under Rule 9011, they do not dispute the existence or accuracy of these facts on this appeal.

November of 1988, the bankruptcy court converted the One Quail case to Chapter 7. Martin continued to manage the property for One Quail's bankruptcy trustee. On March 13, 1989, Unified obtained the appointment of a state court receiver.

On February 22, 1989, the debtor purchased Gibraltar's interest, under the note and trust deed, in the real property and associated personal property and Martin's guaranty of the note, for $250,000 in cash. The source of funds used to pay the $250,000 was a $15,000 loan from Caldwell, a $55,000 loan or repayment of a debt from the debtor's attorney, Clint Hubbard,[5] and $180,000 diverted by Martin, without authority, from the One Quail bankruptcy estate. In return for the $180,000 and an additional $200,000 to be paid from Martin's share of the proceeds of another enterprise in which Martin and Caldwell were involved, Caldwell agreed to release Martin from his guaranty of the $2,000,000 Gibraltar note.

On February 24, 1989, the debtor proceeded with the scheduled foreclosure sale under the Gibraltar deed of trust and purchased the property with a credit bid. Shortly after purchasing the property, and before filing its bankruptcy petition, the debtor paid to Caldwell $157,000 in consulting fees and loan payments. In addition, the debtor transferred $600,000 worth of personal property to C & W Imports, a corporation owned and controlled by Caldwell, and transferred Martin's guaranty of the Gibraltar note, worth between $380,000 and $500,000, to Caldwell.

The debtor filed its Chapter 11 petition on March 15, 1989, one day after the receiver obtained by Unified took possession of the property. Following the filing of the petition, the debtor paid $10,000 monthly rent to C & W Imports for the personal property that was transferred to C & W prior to the petition. The debtor also paid,

without authority, at least $45,000 from cash collateral to Caldwell or companies he controlled. In addition, having effectively removed One Quail's bankruptcy trustee and the state court receiver from the property by the foreclosure sale and the bankruptcy petition, the debtor retained Martin's company to manage the property. When Unified insisted that Martin's company be terminated, the debtor hired and paid 5% of the gross rents, without bankruptcy court approval, to a new management company controlled by Caldwell.

Unified filed a motion to dismiss the bankruptcy case under 11 U.S.C. § 1112(b),[6] on the basis that the debtor filed the petition in bad faith.[7] Unified also filed a motion for an order assessing sanctions against the debtor, its counsel and Caldwell under Fed.R.Civ.P. 11 ("Rule 11"), Fed.R.Bankr.P. 9011 ("Rule 9011") and 11 U.S.C. § 105 on the grounds that the bankruptcy petition was filed in bad faith and for an improper purpose. The United States Trustee joined in both of these motions and also moved to convert the case. Effective August 31, 1989, the bankruptcy court converted the case to Chapter 7.

Following hearings on the sanctions motion, the bankruptcy court filed a Memorandum of Decision on September 5, 1989, assessing sanctions against the debtor and Caldwell in the sum of $261,000, jointly and severally, determining that the filing of the petition was an abuse of the bankruptcy process on the basis of the above described conduct.[8] Following the entry of the order imposing the sanctions on August 21, 1990, the appellants filed these timely appeals.

### ISSUES

1. Whether the bankruptcy court abused its discretion in determining that the filing of the petition was sanctionable conduct under Rule 9011 in light of the surrounding circumstances.

---

5. Caldwell identified the $55,000 payment from Hubbard as either a repayment of a debt owed by Hubbard, a loan from Hubbard to Caldwell or a loan from Hubbard to the debtor.

6. All references are to the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, unless the context otherwise indicates.

7. Unified also filed a motion for relief from the automatic stay on these same grounds. The record does not reflect the bankruptcy court's disposition of this motion.

8. The parties agreed that the motion for sanctions against the debtor's attorneys would be held in abeyance.

2. Whether the bankruptcy court abused its discretion in imposing sanctions against the debtor and Caldwell.

A. Whether the bankruptcy court abused its discretion in imposing sanctions for filing a bankruptcy petition, pursuant to Rule 9011, against a non-attorney principal of a corporate debtor.

B. Whether the bankruptcy court abused its discretion in imposing sanctions for filing a bankruptcy petition against a party who was represented by counsel.

3. Whether the bankruptcy court abused its discretion in imposing $261,000 in attorney's fees as sanctions without taking evidence and making findings as to the reasonableness of the fees.

### STANDARD OF REVIEW

 We apply an abuse of discretion standard in reviewing all aspects of a bankruptcy court's imposition of sanctions under Rule 9011. *In re Grantham Brothers,* 922 F.2d 1438, 1441 (9th Cir.1991); *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 110 S.Ct. 2447, 2461, 110 L.Ed.2d 359 (1990). A bankruptcy court would necessarily abuse its discretion if it bases its ruling upon an erroneous view of the law or a clearly erroneous assessment of the evidence. *Id.*

### DISCUSSION

1. *Whether the bankruptcy court abused its discretion in determining that the filing of the petition was sanctionable conduct under Rule 9011 in light of the surrounding circumstances.*

The appellants contend that the bankruptcy court abused its discretion in deter-mining that the filing of the petition was sanctionable conduct because it did not follow the standards set forth for Rule 9011 sanctions in the Ninth Circuit, because it erroneously applied the standard for dismissal rather than the standard for sanctions and because their intent to reorganize made the filing a good faith one.

A. The Legal Standard under Rules 11 and 9011.

 The bankruptcy court based the award of sanctions on Rule 9011(a)[9] and Rule 11. Because the pertinent language of these rules is virtually identical, authorities analyzing Rule 11 are applicable to the Rule 9011 analysis, *In re Chisum,* 847 F.2d 597, 599 (9th Cir.1988), *cert. denied,* 488 U.S. 892, 109 S.Ct. 228, 102 L.Ed.2d 218 (1988), and this opinion will use authorities under Rule 9011 and under Rule 11 interchangeably.

 Rule 11 provides two bases for the imposition of sanctions: (a) if the paper is frivolous in the sense that after reasonable inquiry, the sanctioned party could not form a reasonable belief that the paper is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; or (b) if the paper is filed for an improper purpose. *See, e.g., Grantham Brothers,* 922 F.2d at 1441; *Townsend v. Holman Consulting Corp.,* 929 F.2d 1358, 1362 (9th Cir.1990) (*en banc*); *Zaldivar v. City of Los Angeles,* 780 F.2d 823, 830–31 (9th Cir.1986). Both the frivolousness and improper purpose components are measured by an objective standard that looks to the reasonableness of the conduct under the circumstances. *E.g., Zaldivar,* 780

---

**9.** Rule 9011(a) provides, in pertinent part, as follows:

The signature of an attorney or a party constitutes a certificate that the attorney or party has read the [petition, pleading, motion or other paper filed]; that to the best of the attorney's or party's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass, to cause delay, or to increase the cost of litigation.... If a document is signed in violation of this rule, the court on motion or on its own initiative, shall impose on the person who signed it, the represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee.

F.2d at 829–30. Thus, the signer's subjective intent is irrelevant to the Rule 11 analysis. *Id.*

■ In the context of a bad faith filing of a bankruptcy petition, the imposition of sanctions under Rule 9011 is similarly determined by an objective test looking to whether, after reasonable inquiry, the sanctioned party could not form a reasonable belief that the petition is well grounded in fact and warranted by existing law or a good faith argument for the modification or reversal of existing law. *In re Villa Madrid,* 110 B.R. 919, 922 (9th Cir. BAP 1990). Under this test, the question is not whether the bankruptcy petition was filed in bad faith.[10] *Id.* Rather, we look to the surrounding circumstances to determine, on an objective basis, if the sanctioned party knew, or reasonably should have known that the petition was filed in bad faith. If this standard is met, the conduct will be sanctionable.[11]

### B. The Application of the Legal Standard.

■ In deciding that the filing of the bankruptcy petition and the surrounding events amounted to sanctionable conduct, the bankruptcy court relied upon evidence of Caldwell's prepetition and postpetition self dealing and evidence of Caldwell's diversion of assets from the debtor's bankruptcy estate and from Unified. The court also relied upon evidence of Caldwell's complicity in the scheme to acquire the property from the One Quail bankruptcy estate with assets diverted from that estate. This effectively rendered the debtor's petition a serial filing aimed at further preventing acts against the property after Unified had

been granted relief from stay in the One Quail bankruptcy. In essence, the bankruptcy court determined that Caldwell was looting assets subject to Unified's security interest and other assets of the bankruptcy estate while using the automatic stay to hold Unified at bay and that this conduct demonstrated a lack of reasonable intent to reorganize and amounted to sanctionable behavior.

Although the bankruptcy court's decision is not couched in the language set forth in *Villa Madrid* or other applicable Ninth Circuit sanctions cases, the bankruptcy court did not abuse its discretion in determining that, given these circumstances, the petition was frivolous and filed for an improper purpose under Rule 9011.

The facts in this case certainly support a determination that the debtor filed its petition in bad faith under the factors set forth in cases such as *In re Stolrow's Inc.,* 84 B.R. 167, 171 (9th Cir. BAP 1988). The debtor was revitalized shortly before the events in question and had only one asset of more than questionable value, which was subject to Unified's security interest. Bankruptcy offered the only hope of forestalling loss of that property. The debtor had no employees other than its principals and few non-insider unsecured creditors. The debtor had little, if any, cash flow or sources of income other than the encumbered rental income from the property. Finally, and arguably most importantly, there are allegations of serious wrongdoing related to the debtor and its property by Caldwell and Martin.

Many of these same facts support the bankruptcy court's implicit determination

---

**10.** Although the test for determining whether a petition should be dismissed for bad faith is not precisely the same as the test for determining sanctions, the factors examined in determining whether a petition is filed in bad faith are obviously relevant in determining whether the sanctioned party reasonably should have known that the petition was filed in bad faith. Thus, we reject the appellant's contentions that the evidence pertaining to such factors is irrelevant to the sanctions determination.

**11.** In their briefs, the parties make much of whether, under Ninth Circuit Rule 11 precedent,

sanctions could be imposed on the basis of the improper purpose prong if the petition is not frivolous. *See, e.g., Townsend* and *Zaldivar, supra.* We need not address this contention because we determine that conduct that satisfies the test set forth in *Villa Madrid* would be sanctionable under either a frivolousness or improper purpose analysis. While the language of *Villa Madrid* may suggest more of a frivolousness analysis, where a party knew, or reasonably should have known that a petition was filed in bad faith, it follows that the party filed the petition for an improper purpose.

that the debtor, through the knowledge of Caldwell, its principal, knew, or after reasonable inquiry, should have known that the petition was not well grounded in fact and warranted by a good faith legal argument. The debtor, whose controlling principal had extensive bankruptcy experience, filed a petition that had virtually all of the indicia of bad faith, as discussed above. In addition, the bankruptcy court found that during this same period of time, the debtor's principal was diverting assets that would be otherwise available to pay its creditors and was engaged in a scheme to divert assets from another bankruptcy estate. This conduct would substantially impair rather than improve the prospects of reorganization. Together with the surrounding circumstances, this conduct supports the bankruptcy court's determination that the debtor lacked a legitimate intent to reorganize and the implicit finding that the debtor, through Caldwell, knew or reasonably should have known that the petition was not intended to serve a valid reorganization purpose but was merely a ploy to hold Unified at bay while Caldwell continued to loot the corporation and interfere with Unified's rights as a secured creditor. In this regard, these circumstances sufficiently support a determination that the petition was frivolous and was filed for an improper purpose.

■ The appellants' arguments do not compel a contrary result. The appellants rely heavily upon Caldwell's statements of subjective intent and the bankruptcy court's recognition that Caldwell may have believed that reorganization was possible to argue that the petition was filed in good faith. These arguments are unpersuasive because: 1) the bankruptcy court found Caldwell inherently unbelievable; 2) any subjective intent or belief in the possibility of reorganization is contradicted by the indicia of bad faith discussed above as well as Caldwell's conduct in diverting assets to himself or his company; and 3) Rule 11 analysis employs an objective rather than subjective test. The appellants also argue that the bankruptcy court improperly relied upon evidence of misconduct that, while perhaps relevant to the question of bad faith in the dismissal context, is not relevant to Rule 11 analysis. We disagree. Such evidence reflects upon the debtor's intentions and prospects of reorganization as well as upon whether the debtor knew or reasonably should have known that the petition was filed without a valid reorganization purpose and therefore in bad faith. As discussed above, such evidence is directly related to and provides further support for the bankruptcy court's determination that the filing of the petition amounted to sanctionable conduct. Given this evidence, we find no abuse of discretion in this regard.

2. *Whether the bankruptcy court abused its discretion in imposing sanctions against the debtor and Caldwell.*

A. Whether the bankruptcy court abused its discretion in imposing sanctions for filing a bankruptcy petition against a non-attorney principal of a corporate debtor.[12]

■ The appellants contend that the bankruptcy court abused its discretion by imposing sanctions against Caldwell because Rule 9011 does not provide for sanctions against a non-party, non-attorney who does not sign the paper in question. Rule 9011 provides, in pertinent part:

If a document is signed in violation of this rule, the court on motion or on its own initiative, shall impose on the person who signed it, the represented party, or both, an appropriate sanction ...

The plain language of the rule does not contemplate sanctions against a person who is neither the person who signed the offending pleading nor a party.

■ In *Pavelic & LeFlore v. Marvel Entertainment Group*, 493 U.S. 120, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989), the Su-

12. The related argument that the bankruptcy court cannot impose sanctions against represented entities for the bad faith filing of a bankruptcy petition will be addressed below. For purposes of this issue, we will assume that the bankruptcy court may impose sanctions against represented entities.

preme Court stressed the plain meaning of Rule 11 in holding that the law firm of an attorney who signs a pleading in violation of the Rule cannot be sanctioned for the violation. *See also Giebelhaus v. Spindrift Yachts,* 938 F.2d 962 (9th Cir.1991). Although the specific holding of *Pavelic & LeFlore* is not directly applicable to the issue before us, we are nevertheless compelled to follow the broader principle applied in that case—that the reach of Rule 11 should not extend beyond its plain language. As the Court recognized in *Pavelic & LeFlore,* the plain language must prevail, even if the broader interpretation would more effectively achieve the purposes of the Rule.

As discussed above, the bankruptcy court imposed sanctions against Caldwell because the filing of the bankruptcy petition was for an improper purpose and was not well grounded in fact nor warranted by existing law. Because Caldwell is neither a party nor an individual who signed the petition in violation of the Rule, the plain language of Rule 9011 will not support the imposition of sanctions against Caldwell for the bad faith filing of the petition. We recognize that some courts have authorized the imposition of sanctions against the principal of a corporate party when the principal personally participated in and bears responsibility for the sanctionable conduct. *See In re Memorial Estates, Inc.,* 116 B.R. 108 (N.D.Ill.1990); *Midwest Properties No. Two v. Big Hill Investment Co.,* 93 B.R. 357 (N.D.Tex.1988). Such cases, however, do not address the conflict between that result and the plain language of the Rule.

We also recognize the compelling policy grounds for imposing sanctions against Caldwell, given the fact that he was actively and primarily involved in the wrongdoing that lead to the imposition of sanctions and the fact that imposition of sanctions against the debtor is likely to be a hollow gesture that would, even if such sanctions were paid, merely reduce the assets available to pay other creditors. These policy grounds, however, cannot provide a ground for ignoring the plain language of Rule 9011. For this reason, we must determine that the bankruptcy court abused its discretion in imposing sanctions under Rule 9011 against Caldwell for the bad faith filing of the petition.

By our order of September 30, 1991 we requested the parties to brief whether the bankruptcy court's imposition of sanctions against Caldwell could be affirmed on the basis of the bankruptcy court's inherent power to assess attorney's fees for bad faith conduct under *Chambers v. NASCO, Inc.,* —— U.S. ——, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). Upon consideration of the parties' supplemental briefs, we determine that even if bankruptcy courts have such inherent power under *Chambers* it will not support the imposition of sanctions against Caldwell.

Neither *Chambers* nor the other cases cited by the parties involved the use of this inherent power as a basis to sanction an entity who is neither a party nor an attorney. Similarly, our research failed to uncover any such case. In addition, the inherent power to impose sanctions for bad faith litigation conduct is based, in part, upon an exception to the "American Rule" which prohibits the shifting of fees from the prevailing party to the losing party in most cases. *See Chambers,* 111 S.Ct. at 2133. This exception to the American Rule developed as a means of imposing fees and costs upon a party or an attorney on the basis of abusive conduct, *see Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 258–59, 95 S.Ct. 1612, 1622–23, 44 L.Ed.2d 141 (1975), and did not purport to address the liability of non-parties for fees or costs. In this regard, our research uncovered no cases imposing sanctions against a non-party under this exception to the American Rule. Given the absence of authority supporting the imposition of sanctions against a non-party and the fact that the inherent power to impose sanctions for bad faith conduct must be exercised with restraint and discretion, *see Chambers,* 111 S.Ct. at 2132, *Zambrano v. City of Tustin,* 885 F.2d 1473, 1478 (9th Cir.1989), we decline to uphold the bankruptcy court's imposition of sanctions against Caldwell under any inherent power.

As the dissent recognizes, this result is troubling because Caldwell is the primary cause of this abuse of the bankruptcy system. However, in determining that neither Rule 9011 nor the bankruptcy court's inherent power provide a basis for upholding the bankruptcy court's imposition of sanctions against Caldwell, we do not hold that Caldwell is immune from any sanction award. We express no opinion as to whether Unified could, in an appropriate action, enforce the debtor's corporate liability for sanctions against Caldwell under any applicable state law that would allow a creditor to pursue a corporate officer or principal to recover debts of the corporation. In addition, Caldwell did sign a document that would arguably support the imposition of some sanctions against him under Rule 9011. He signed, as Chief Executive Officer of the debtor, a statement of financial affairs that the bankruptcy court determined to be false and fraudulent. While such a fraudulent statement of affairs would arguably violate Rule 9011 in that it is not well grounded in fact, the bankruptcy court's sanction award was based on the bad faith filing of the petition, not this false document. In this regard, the measure of damages awarded to Unified corresponds to the attorney's fees incurred as a result of the bad faith filing of the petition, not the attorney's fees incurred as a result of the fraudulent statement of affairs. Thus, while the false financial statement signed by Caldwell would not support the bankruptcy court's award of sanctions, it would arguably support the imposition of sanctions in some amount against Caldwell. We therefore remand this matter to the bankruptcy court for a determination of the appropriate sanction against Caldwell under Rule 9011, if any, for his signature on the fraudulent statement of affairs.

B. Whether the bankruptcy court abused its discretion in imposing sanctions for filing a bankruptcy petition against a party who was represented by counsel.

The debtor's next contention is that the burden of the sanctions should be borne solely by the debtor's attorney because the issue of a bad faith filing of a bankruptcy petition is a complex multi-factored legal issue and that in the case of such issues, parties should be shielded from sanctions by their reliance upon the advice of their competent counsel.

The language of Rule 9011 expressly authorizes the imposition of sanctions against "the person who signed [the offending document], the represented party, or both." *See Business Guides Inc. v. Chromatic Communications Enterprises, Inc.,* —— U.S. ——, 111 S.Ct. 922, 112 L.Ed.2d 1140 (1991) (imposing an objective standard of reasonable inquiry under Rule 11 upon represented parties who sign the offending document). The Ninth Circuit has held in another context that a party may be held responsible for sanctions under Rule 11 for the good faith mistake of law or the carelessness of counsel. *Lloyd v. Schlag,* 884 F.2d 409, 412 (9th Cir.1989).

In the context of sanctions for bad faith filing of bankruptcy petitions, however, courts apply the general rule that sanctions are to be allocated between counsel and client according to their relative culpability. *See, e.g., In re Whitney Place Partners,* 123 B.R. 117, 123–124 (Bankr. N.D.Ga.1991); *In re Jones,* 117 B.R. 415, 421 (Bankr.N.D.Ind.1990). Where the client is unsophisticated and the sanctions arise from a misreading of or failure to research the applicable law, sanctions have been imposed solely on counsel. *See Weiszhaar Farms, Inc. v. Livestock State Bank,* 113 B.R. 1017, 1022–24 (D.S.D.1990). Where, however, the client is knowledgeable about bankruptcy law or where the attorney and client share responsibility for the litigation strategy, courts can impose sanctions upon the client or upon the client and the lawyer jointly and severally. *See Whitney Place Partners, supra; Jones, supra; see also, In re Eighty South Lake, Inc.,* 63 B.R. 501 (Bankr.C.D.Cal.1986), *aff'd,* 81 B.R. 580 (9th Cir. BAP 1987).

Under this authority, the appellants' contentions are without merit. First, if the appellants' contentions are accepted, sanctions for filing a bankruptcy petition in bad faith would always lie solely against counsel and could never be imposed against

the debtor. Such a result would be inconsistent with cases such as *Eighty South Lake*. Second, in considering the relative culpability of the debtor and its attorney, the debtor must bear much of the responsibility. Caldwell, who acted for the debtor, was quite sophisticated in bankruptcy matters, having been involved as a principal in between 10 and 50 bankruptcy cases. Caldwell's course of conduct on behalf of the debtor in engineering the transactions leading to the filing of the petition and in diverting encumbered assets indicates that the debtor bears responsibility for its conduct, including the decision to file bankruptcy. Given this responsibility, the bankruptcy court did not abuse its discretion in imposing sanctions against the debtor.

3. *Whether the bankruptcy court abused its discretion in imposing $261,000 in attorney's fees as sanctions without taking evidence and making findings as to the reasonableness of the fees.*

The appellants contend that the bankruptcy court abused its discretion in awarding sanctions in the amount of $261,000 by failing to make findings as to the reasonableness of the sanction award and the basis of the calculation of the fees and the sanction award.

■■■ A bankruptcy court has wide discretion to determine the appropriate sanction under Rule 9011. *Hudson v. Moore Business Forms, Inc.*, 836 F.2d 1156, 1163 (9th Cir.1987). Rule 9011 provides that in determining the appropriate sanction, a court "may include an order to pay to the other party or parties the amount of reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee." The measure of sanctions under this language is not the actual fees and expenses incurred, but those that the court determines to be reasonable. *See, e.g., Jackson v. Law Firm of O'Hara, Ruberg, Osborne and Taylor*, 875 F.2d 1224, 1229 (6th Cir.1989); W. Schwarzer, *Sanctions Under the New*

*Federal Rule 11—A Closer Look*, 104 F.R.D. 181, 203 (1985). Another factor guiding a court's discretion is that a court should impose the least severe sanction likely to serve Rule 11's principal goal—deterrence. *Jackson*, 875 F.2d at 1229; *see Eighty South Lake*, 63 B.R. at 510–11; *Midwest Properties*, 93 B.R. at 364; *see Cooter & Gell*, 110 S.Ct. at 2454 (the central purpose of Rule 11 is to deter baseless filings).

■■■ Under these standards, the record does not support the bankruptcy court's imposition of sanctions in the amount of $261,000. The bankruptcy court determined the amount of sanctions on the basis of Unified's declaration and offer of proof that it incurred attorney's fees and out of pocket expenses in that amount. Although the bankruptcy court was not required to make explicit findings, *see Lloyd v. Schlag*, 884 F.2d at 413, there is no indication in the record that the court considered the reasonableness of the amount claimed as sanctions. The fact that Unified did not supplement its declaration regarding the amount of fees with any supporting documentation indicates that the court did not consider the reasonableness of the fees and expenses incurred.[13] In addition, there is no indication in the record that the court considered adjusting the sanction award to reflect the deterrence purpose of Rule 9011. A final problem that provides concern is the fact that the sanctions awarded in this case are much more severe than the sanctions awarded in similar bad faith filing sanction cases. *See, In re Cedar Falls Hotel Properties Ltd. Partnership*, 102 B.R. 1009, 1020–21 (Bankr.N.D.Iowa 1989); *Eighty South Lake*, 63 B.R. at 510–11.

■■■ In this regard, the record does not reflect that the bankruptcy court applied the appropriate factors in determining the amount of sanctions. We are therefore unable to determine whether the award of $261,000 in sanctions is an abuse of discretion and we remand this matter so that the

---

13. In this regard, *Lloyd v. Schlag* is distinguishable because that case indicates that the trial court conducted an inquiry into the reasonableness of the amounts claimed as sanctions.

bankruptcy court may reconsider whether such an award of sanctions is justified.[14]

## CONCLUSION

For the reasons set forth above, the bankruptcy court did not abuse its discretion in determining that the filing of the bankruptcy petition was sanctionable conduct under Rule 9011 and in imposing sanctions against the debtor. We AFFIRM the bankruptcy court's decision in this regard. We find the imposition of sanctions against Caldwell as a result of the filing of the bankruptcy petition, however, an abuse of discretion. We REVERSE the court in this regard and REMAND for a determination of the appropriate sanction, if any, for Caldwell's signing of the fraudulent statement of affairs. We further REMAND for reconsideration of the amount of the sanction award in a manner consistent with this opinion.

VOLINN, Bankruptcy Judge, concurring and dissenting:

I concur in those portions of the court's ruling holding that the filing of the bankruptcy petition was sanctionable conduct under Bankruptcy Rule 9011 and remanding for reconsideration of the amount of the sanction award to the bankruptcy court. I am constrained to dissent, however, from that portion of the court's ruling reversing imposition of sanctions against the appellant, Craig E. Caldwell, and imposing Rule 9011 sanctions only against the debtor.

The trial court filed a thirty-six page memorandum decision setting forth in great detail its findings and conclusions. These findings address themselves extensively to Mr. Caldwell's complete dominance of the debtor and manipulation of all other parties who had ostensible responsibility for institution of the bankruptcy proceedings. Thus, the attorney for the debtor, William N. Lobel, has, as yet, not been subject to a claim for sanctions; as stated by the trial court, "The parties have agreed that the motion for sanctions against RM's attorneys will be held in abeyance." As to the party who actually signed the debtor's petition, who also has not been subject to any claim for sanctions, the court stated: "The corporation is wholly owned by Mr. Caldwell ... Reverend Steel testified that he considered Mr. Caldwell a great benefactor of South Central Los Angeles, but the corporate president knew little else about RM."

The memorandum further stated:

> Mr. Caldwell certified the corporate resolution authorizing a petition under Chapter XI [sic] of the Bankruptcy Code on March 13, 1989. He also signed the false statement of affairs. Reverend Steel can be charitably described as a figurehead in the actual signing of the petition. Mr. Caldwell is still subject to Rule 9011 for his actions as the sole owner and director of RM in ordering the filing of the bankruptcy.

The record shows further that Caldwell has had extensive bankruptcy experience in a number of bankruptcy cases. While he did not sign the bankruptcy petition in this case, he certified the corporate resolution authorizing the petition and signed a false statement of affairs which accompanied the bankruptcy petition. Thus, in addition to having been the impelling force behind the filing of the petition, he participated in its formulation.

While the language of Rule 9011 adverts to a signature, it is important to note that, functionally, it requires a certification. It is clear that Mr. Caldwell was responsible for the filing of the bankruptcy petition and its attendant certification as required by Rule 9011. The trial court recognized

---

**14.** Unified argues that the appellants' failure to controvert the offer of proof and declaration regarding the amount of fees requires that we affirm the amount of the sanctions. We disagree. Despite the appellants' failure to controvert the evidence that Unified incurred $261,000 in fees and costs, Unified presented and the bankruptcy court considered no evidence that would enable it to determine the reasonableness of those fees. Such underlying evidence and findings concerning the reasonableness of the fees incurred are necessary to support an award of sanctions in such a large amount.

this in the form of specific findings which are set forth in the Memorandum Decision. In the light of the record, it can hardly be argued that these findings are clearly erroneous.

As stated by Justice Douglas in *Bank of Marin v. England*, 385 U.S. 99, 103, 87 S.Ct. 274, 277, 17 L.Ed.2d 197, 201 (1966): "Yet we do not read these statutory words with the ease of a computer." A statute or rule is enacted in order to accomplish a purpose. While, hopefully, the purpose is expressed in plain language, the statute or rule should not be read so as to accomplish a result which runs counter to its purpose. The rule requires a certification that:

> "... the attorney or party has read the [petition]; that to the best of the attorney's or party's knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law ... and that it is not interposed for any improper purpose, such as to harass, to cause delay, or to increase the cost of litigation...."

The debtor is a corporation which was manipulated by Caldwell, its sole stockholder, in order to frustrate, delay, and cause great expense to Unified Capital Corp. and any other pre- or post-bankruptcy creditors it may have. These creditors are the victims of Caldwell's actions. The debtor is a hollow shell and probably has no assets with which to compensate the creditors who are being awarded sanctions against it; or, if it does have assets then it will be paying the creditors from an asset pool which should be available to them for distribution on their claims. To put it otherwise, the only way in which the debtor will be answerable for payment of sanctions without hurt to its victims would be if it were solvent, a prospect which remains to be demonstrated.

Caldwell, as the party who was the principal and dominant force in perpetrating the bad faith litigation, should not be allowed absolution from Rule 9011 sanctions simply because his unwitting proxy, at his instance, held the pen which signed the document initiating the bad faith proceedings.

I respectfully dissent.