In re CEDAR TIDE CORP., Debtor.

CEDAR TIDE CORP., Plaintiff–Appellee,

v.

Sidney W. MINTZ, Defendant–Appellant.

No. CV 92–5138 (ADS).
Bankruptcy No. 187–71386–352 (MAH).

United States District Court,
E.D. New York.

March 10, 1994.

8. Unlike a trustee, a debtor in possession is not      entitled to compensation. *See supra* note 3.

undefinedundefined

**810**

Burton, Scott & Associates, P.C. (Jonathan C. Scott, of counsel), Melville, NY, for defendant-appellant.

Pinks, Brooks, Stern & Arbeit (Robert S. Arbeit, of counsel), Hauppauge, NY, for debtor/plaintiff-appellee.

## DECISION AND ORDER

SPATT, District Judge.

Sidney Mintz, an attorney, appeals from the September 1, 1992 judgment by United States Bankruptcy Judge Marvin Holland which imposed sanctions against him in the amount of $35,000. Those sanctions were assessed as the result of an adversary proceeding brought in the Bankruptcy Court by the law firm of Pinks, Brooks, Stern & Arbeit based upon six purportedly frivolous motions filed by defendant Mintz on behalf of his client, Chandler's Cove Ltd.

This Court previously signed an order to show cause pursuant to Fed.R.Bank.Proc. 8005. After oral argument on the motion, the Court granted that portion of the appellant Mintz's application which requested a stay of the enforcement of the judgment in the adversary proceeding pending the hearing and determination of this appeal.

## FACTUAL BACKGROUND

The appellant Sidney Mintz has been an attorney since 1955. His counsel states that the appellant has never been the subject of any prior disciplinary proceeding. In order to fully comprehend the nature of the action now before the Court, it is necessary to review certain information concerning both the debtor in the bankruptcy proceeding, namely, Cedar Tide Corporation ("Cedar Tide") and the relationship of Sidney Mintz to the Cedar Tide bankruptcy proceeding.

Apparently, Cedar Tide's primary asset is a forty (40) acre parcel of undeveloped land—waterfront property on Mt. Sinai Harbor. The two shareholders of Cedar Tide are Elizabeth Chandler, a 90 year-old widow, and her son Frederick Chandler.

Counsel for the appellant states that in 1983 or 1984, Elizabeth Chandler entered into one or more stipulations in state court in lieu of a judgment of foreclosure by which she agreed, on behalf of Cedar Tide, to sell the 40–acre parcel in Mount Sinai to Mint Factors, a partnership which held mortgages on the property and on which no payment had been made. According to counsel, before a judgment and order could be entered to effectuate the state court's decision that

Mint Factors was entitled to the property, Cedar Tide filed a petition for reorganization under Chapter 11 of the United States Bankruptcy Code on December 10, 1985. Thereafter,

"Harold Spivack, the attorney for [Cedar Tide] at the time, subsequently moved for leave to withdraw as counsel in the Bankruptcy Court, citing the fact that the principals of [Cedar Tide] had concealed from him the fact that [Cedar Tide] was a defunct entity which had been dissolved by the State of New York for failure to pay its franchise taxes for a period of more than six years, and expressing his belief that the bankruptcy was consequently invalid because under New York law a dissolved corporation could only liquidate its assets and wind up its affairs. A deed was recorded in the Suffolk County Clerk's office on March 27, 1986, transferring ownership of forty acres of real property located in Mt. Sinai, New York from CT [Cedar Tide] to CCI [Chandler's Cove Inn]" (Appellant's Brief at pp. 5–6).

By contrast, counsel for the appellee Cedar Tide provides a somewhat different scenario. Counsel states that the Mt. Sinai Harbor parcel has been owned by Mrs. Chandler or Cedar Tide for over 50 years. After Cedar Tide filed a Chapter 11 petition on December 10, 1985, a deed was purportedly signed on behalf of Cedar Tide Corp. in March, 1986, transferring the parcel to Chandler's Cove, the appellant's client. Counsel for Cedar Tide states that Paul Scott, the father of counsel for the appellant here, allegedly formed the corporation known as Chandler's Cove Inn Ltd. ("Chandler's Cove"), and caused the deed to be drawn.

However, Cedar Tide's counsel states that no one obtained the approval of the Bankruptcy Court for that transaction. Cedar Tide's counsel further asserts that the deed was signed by one Stanley Kommissar, whose signature was then notarized by Sidney Mintz. Elizabeth Chandler and Frederick Chandler deny ever having authorized the transaction transferring the parcel.

Based on the transfer, counsel for Cedar Tide commenced an adversary proceeding in the Bankruptcy Court against Chandler's Cove to set aside the conveyance. Subsequently, Cedar Tide filed a motion for summary judgment on the transfer issue.

Four days before oral argument on the summary judgment motion, Chandler's Cove filed a Chapter 7 petition in the United States Bankruptcy Court for the Southern District of New York. Appellee's counsel contends that when Cedar Tide's summary judgment motion was argued before United States Bankruptcy Judge Cecilia Goetz in the Eastern District of New York, appellant's counsel did not reveal the fact that Chandler's Cove had filed a bankruptcy petition in the Southern District. Further, Chandler's Cove had apparently claimed as its main asset the same piece of property purportedly owned by Cedar Tide. Ultimately, in October, 1986, Judge Goetz granted Cedar Tide's motion for summary judgment and signed a judgment setting aside the transfer of the Mt. Sinai Harbor property to Chandler's Cove.

During the course of Cedar Tide's bankruptcy proceeding, Sidney Mintz filed a number of motions before the Bankruptcy Court. These included, among others, the following:

1. a March 20, 1987 motion seeking to enjoin the law firm of Pinks, Brooks, Stern & Arbeit from contacting and harassing Douglas Durnin, Esq. who purported to be representing Chandler's Cove Inn Ltd. on its appeal of Judge Goetz's judgment of October 16, 1986, and further seeking the discharge of interim Trustee Robert Pryor;

2. a March 20, 1987 motion seeking the dismissal of Cedar Tide's bankruptcy on the grounds that the petition was filed in the absence of good faith and with the specific intent to defraud creditors;

3. two motions made in April, 1987, one in the Cedar Tide case and the other in the Chandler's Cove case, each seeking to have Judge Goetz recuse herself;

4. an order to show cause signed May 12, 1987 by Judge Goetz which was withdrawn prior to the return date and a May 26, 1987 motion for reargument; said order denied defendant's cross-motion for summary judgment and other relief, and di-

rected that a hearing be held to resolve three additional issues: (a) the sanctions to be imposed on defendant Mintz for filing the enumerated motions; (b) whether the proof of claim signed by Susan Fortuna and submitted on behalf of Chandler's Cove in Cedar Tide's bankruptcy case on April 18, 1991 subjected Fortuna and Mintz to sanctions pursuant to Fed. R.Bankr.P. 9011 and the court's inherent powers; and (c) whether the submission of certain papers by the defendant's then attorney, Charles E. Morrison, subjected the defendant to Rule 9011 sanctions. The attorneys for Cedar Tide argued that these motions were "frivolous" and renew that argument in this appeal.

## ADVERSARY PROCEEDING IN THE BANKRUPTCY COURT

Counsel for Cedar Tide brought a separate adversary proceeding against Mintz in June, 1987, seeking to have Rule 9011 sanctions imposed and for a restraining order preventing Sidney Mintz "or anyone acting on his behalf from bringing any further motions, actions, proceedings or any other legal process against Cedar Tide until further order of the Bankruptcy Court" (Appellee's Brief at p. 6). The appellee claims that Cedar Tide had to bring a separate adversary proceeding for sanctions and a restraining order because that is the only way an injunction in Bankruptcy Court can be obtained under Rule 7001.

The adversary proceeding in Bankruptcy Court which sought Rule 9011 sanctions against Mintz was commenced by service of a summons and complaint on behalf of Cedar Tide. In the Complaint, Cedar Tide, through its attorneys, Pinks, Brooks, Stern & Arbeit (hereafter "PBSA"), alleged that Mintz, as the attorney for the debtor Chandler's Cove, filed six motions between March 20, 1987 and May 20, 1987 which were "frivolous and brought solely to harass Cedar Tide and increase the cost of litigation" (Appellant's Brief at p. 8). On the same day the complaint was filed, Cedar Tide also filed an order to show cause to set a hearing for the purpose of obtaining an injunction in Cedar Tide's second cause of action, namely, to enjoin the defendant Mintz from bringing any further proceedings in the Bankruptcy Court relating to the Cedar Tide case.

According to counsel for Sidney Mintz, the "Complaint alleged in conclusory terms that said motions were frivolous within the meaning of Rule 11. It was alleged that as a result ... plaintiffs were caused to incur attorney's fees for twenty (20) hours spent reviewing and answering said motions" (Appellant's Brief, at p. 2).

The defendant Mintz filed a cross-motion on June 19, 1987 seeking, among other things, recusal of Judge Goetz. Mintz subsequently filed another cross-motion seeking summary judgment and for sanctions. On June 25, 1987, Judge Goetz recused herself and referred the Cedar Tide and Chandler's Cove Ltd. cases and all related proceedings to United States Bankruptcy Judge Marvin A. Holland. On July 7, 1987, Mintz filed an Answer, followed by the plaintiff's motion for summary judgment on September 8, 1987. Judge Holland heard oral argument on the motions on September 30, 1987.

Cedar Tide argued that PBSA had every right to speak with Douglas Durnin, Esq., who was purportedly representing Chandler's Cove in its appeal of Judge Goetz's judgment of October 16, 1986 which set aside the property transfer. According to counsel for Cedar Tide, at that time, Chandler's Cove was a Chapter 7 debtor by its own choice and Durnin was not retained by the trustee pursuant to a court order to represent Chandler's Cove. Counsel maintains that Durnin's representation of Chandler's Cove, therefore, was improper, and PBSA pointed out this fact to Durnin. Counsel further states that all of the discussions with Douglas Durnin were cordial, and that Durnin did not disagree with the law firm's position.

Counsel for Cedar Tide also contends that in his petition of March 20, 1987, Mintz stated that the principal asset of Chandler's Cove was the realty actually owned by Cedar Tide. This was some five months after Judge Goetz set aside the deed transferring the realty from Cedar Tide to Chandler's Cove. According to counsel, "this refusal to recognize orders of the Bankruptcy Court and/or the District Court has also been a

recurring theme throughout the motions made by Mintz."

The appellee draws the Court's attention to accusations set forth by the appellant against PBSA, including alleged criminal acts such as conspiracy, bankruptcy fraud and perjury, as well as particular allegations against an individual member of the firm, Robert Arbeit, whom the appellant claimed had damaged Chandler's Cove in the sum of $3 million.

According to Robert Arbeit, when Sidney Mintz moved before Judge Goetz to have the Cedar Tide bankruptcy dismissed, Mintz argued that the transfer of the property from Cedar Tide to Chandler's Cove was made in the ordinary course of business and therefore was not a sale which required Court approval. Arbeit claims this was an "absurd argument" and "surely, an attorney of Mintz's experience must have known that this alleged transfer of Cedar Tide's only asset could not in any way be deemed a transfer made in the ordinary course of business" (Appellee's Brief at p. 9). Counsel added that Mintz's answer to the complaint "cries out for the imposition of sanctions." Mintz denied the jurisdictional allegations set forth in the complaint which were predicated upon the action being related to a valid bankruptcy proceeding. Counsel for Cedar Tide adds that

> "despite the Bankruptcy Court's ruling to the contrary, Mintz maintained that Cedar Tide's dissolution by proclamation of the State of New York in 1979 effectively barred the entity from filing a bankruptcy petition, and therefore Mintz refused to accept the ruling of the Bankruptcy Court that Cedar Tide was properly in bankruptcy before it. As the Honorable Jack B. Weinstein, Judge of the District Court pointed out in the argument of Chandler's Cove's appeal, a minimum level of legal competence would demand that a motion be made to dismiss the proceeding, not that the proceeding be treated as a nullity."

Apparently, the appellant Mintz denied all of the remaining paragraphs of the complaint, including a denial that the Bankruptcy Court's judgment voided the deed. According to Cedar Tide's counsel, all of Mintz's defenses were therefore frivolous and set forth in bad faith.

Judge Holland reserved decision on the motions. The written decision was rendered on February 7, 1992. The Bankruptcy Court granted Cedar Tide's summary judgment motion upon the complaint for sanctions against Mintz in the adversary proceeding, pursuant to Fed.R.Bankr.P. 9011. A hearing on the sanctions was held on June 11, 1992.

Mintz testified at the sanctions hearing that he was admitted to the Bar in 1955, that he had been actively practicing law since that time, and that in 37 years of practice, he had never been disciplined. He further testified that

> "he had no financial interest whatsoever in the affairs of CCI [Chandler's Cove].... He received much of the factual information which he used in preparing the motions from Paul and Shari Scott whom he had known for thirty and twenty-five years respectively and whose veracity he had no reason to doubt. He also obtained information from the real property records, affidavits made by tenants of the apartments on the property and Building Department records...." (Appellant's Brief at p. 15).

According to counsel for the appellant, over counsel's strenuous objection, Judge Holland directed that interest be added to the Rule 9011 sanctions and that $20,000 of the sanctions be paid directly to the Clerk of the Court, $15,000 of which was to be immediately transmitted to the U.S. Treasury. According to counsel, Judge Holland called the Clerk of the Court as the Court's own witness. The Clerk was asked to calculate salary and overhead costs and set a figure of less than $1,100. Notwithstanding this evidence, the Court directed that Mr. Mintz pay $20,000 to the Clerk of the Court.

After making Findings of Fact and Conclusions of Law, the Bankruptcy Court entered judgment in September, 1992, as follows:

> (1) against Mintz in the amount of $15,000 payable to the law firm of Pinks, Brooks, Stern & Arbeit to be credited to the account of Cedar Tide in the bankruptcy

proceeding; $1,250.00 of which will be joint and several with Susan Fortuna;

(2) against Mintz in the amount of $15,000, $1,250 of which will be the joint and several liability of Susan Fortuna, payable to the Clerk of the Court for transmission to the Treasury of the United States; and

(3) against Mintz in the amount of $5,000, $750 of which will be the joint and several liability of Susan Fortuna, payable to a fund which will be held by the Clerk of the Court for the sole and exclusive purpose of reimbursement of actual and necessary disbursements and expenses incurred by *pro bono* counsel only to the extent not otherwise compensable or reimbursable.

Mintz's cross-motion for summary judgment was denied.

### THE APPEAL

Sidney Mintz appeals from the September 1, 1992 judgment of the United States Bankruptcy Court which imposed sanctions upon him in the sum of $35,000.

The appellant asserts two major arguments: 1) Cedar Tide had no grounds on which to bring a separate adversary proceeding in the Bankruptcy Court for the purpose of having sanctions imposed upon Stanley Mintz and was not entitled to attorney's fees; and 2) the judgment in favor of the clerk of the court was (a) excessive, (b) constituted an illegal taxation of judicial and administrative salaries, and (c) was equivalent to an unauthorized adjudication of criminal contempt.

### A. The Separate Adversary Proceeding

Essentially, the appellant claims that the normal procedure for procuring sanctions when responding to allegedly frivolous motions is to move for sanctions in the same proceeding—not to institute a separate lawsuit. Arguing that the appellee had no legal basis on which to initiate a separate lawsuit for sanctions, the appellant draws upon the Second Circuit's decision in *New York News, Inc. v. Kheel,* 972 F.2d 482 (2d Cir.1992) which discusses Rule 11, the equivalent of Fed.R.Bankr.P. 9011, in the following context:

"The Federal Rules of Civil Procedure are procedural in nature and do not provide substantive rights. *See* Rules Enabling Act, 28 U.S.C. § 2072 ("The Supreme Court shall have the power to prescribe general rules of practice and procedure and rules of evidence" but "[s]uch rules shall not abridge, enlarge or modify any substantive right.").

Accordingly, appellant argues, Rule 9011 did not confer upon either the plaintiffs or their attorneys any substantive right whatsoever.

Assuming *arguendo* that the rules do create a substantive right, appellant continues, no evidence has ever been submitted over the course of the five years of these proceedings to demonstrate that the plaintiff has sustained any damages. The Appellant notes that: 1) the PBSA firm has no written retainer agreement with Cedar Tide; 2) PBSA has never discussed with Cedar Tide any of the litigation that forms the basis of the sanctions lawsuit, nor any of the associated expenses; and 3) PBSA has never billed its client over the course of the five years for any of the work performed in this action. Counsel adds the following:

"Just as defendant is charged with making a reasonable inquiry before submitting a motion or bringing an action before the Court, so must PBSA not be permitted to submit a groundless complaint simply because they did not perform the necessary research, especially where specific procedures were available for procuring sanctions, procedures which PBSA voluntarily elected not to employ" (Appellant's Brief at p. 19).

Where the sanctions to be imposed are attorney's fees, the appellant contends that Rule 9011 would not include the wording "reasonable attorney's fees incurred" unless it was intended that they be fees actually incurred.

The appellant concedes, however, that in his February 28, 1992 Order, Judge Holland directed PBSA to file a "detailed breakdown of the monetary amounts sought by them [the attorneys for Cedar Tide] as sanctions" and that PBSA did file a statement for damages. Mintz also argues that the majority of the hours claimed by the plaintiff relates to motions which are not subject to sanctions.

Appellee Cedar Tide claims that Mintz's argument demonstrates the appellant's lack of familiarity with litigation in the Bankruptcy Courts. Counsel states that during the course of a bankruptcy proceeding, bills are not sent to a client. According to Arbeit, the merits of this proceeding as well as the entire bankruptcy proceeding were always discussed with the Chandlers.

Mintz further contends that since Judge Holland did not particularize sanctions to each motion, the award of sanctions was improper. According to Mintz, Judge Holland predicated the imposition of sanctions on Fed.R.Bankr.P. 9011, and did not invoke either 28 U.S.C. § 1927 or the "inherent power of the Court." Mintz relies upon Judge Holland's statement at the conclusion of the June 11, 1992 hearing, as follows:

"[s]ince sanctions are not compensatory, sanctions are not being awarded because of any one motion * * * Sanctions are being imposed because of a consistent, persistent, offensive and improper course of conduct that transcends the individual components that I have heard testimony with regards to * * * (A. 69–71; T. 204–5)."

The appellant claims that this comment is wholly contrary to the language and intent of Rule 9011. In light of Judge Holland's statement, the appellant directs the Court's attention to *Introcaso v. Cunningham*, 857 F.2d 965 (4th Cir.1988), in which the Fourth Circuit stated:

"[r]egrettably, the District Court did not identify what pleading, motion or other paper, the signing of which and the proceedings stemming therefrom, it regarded as frivolous. The District Court's finding is so general that it may include some post-verdict proceedings which did not result from the signing of a document as proscribed by Rule 11" (*id.*).

Appellant also argues that more than half the hours claimed by the plaintiff are unrelated to the proof of claim and to the other allegedly frivolous motions. For example, he maintains that the last 29.95 hours claimed on the statement of damages do not correlate with the four motions which Judge Holland found to have violated Rule 9011. Further, the appellant asserts that he should not be made to reimburse the appellee for the fees arising out of the separate adversary proceeding, which was unnecessary, because the appellee could have easily raised its claim for sanctions in the replies to the respective motions. The appellant also decries the appellee's failure to adduce evidence in the Bankruptcy Court of the prevailing hourly rates for attorneys of Mr. Arbeit's experience, as well as the fees assessed for travel time.

According to the appellant, Judge Holland was required by the language of Rule 9011 to determine a "reasonable attorney's fee" given the evidence that the sanction imposed was in reality an attorney's fee, and that there is no evidence in the record that such a determination was ever made. Finally, appellant argues that the Bankruptcy Court rendered a judgment for $15,000, an excess of more than $5000 claimed by the plaintiff as actual fees incurred.

### B. *The Judgment in Favor of the Clerk of the Court*

In his February, 1992 Order, Judge Holland directed that a hearing be held to resolve the sanctions issue. To facilitate the matter, the court further directed PBSA to submit in advance of the hearing date a detailed breakdown of the monetary amount sought by them as sanctions against Sidney Mintz. The Order also directed the Clerk of the Court to testify at the hearing regarding the cost of judicial and administrative time incurred in the processing of the allegedly frivolous motions.

Appellant's counsel states that the original complaint, which was never amended, alleged damages amounting to legal fees for twenty hours as sanctions. Nonetheless, the statement of damages then submitted to Judge Holland four years later by PBSA claimed a total of forty-five hours of legal time.

Counsel further contends that while 28 U.S.C. § 1920 permits a court to tax fees of the clerk and marshal as well as the court reporter, it does not provide for taxation of salaries, expenses, or costs of the Clerk of the Court or his office. According to counsel, the imposition of $20,000 as sanctions

clearly surpasses the limits defined by Congress in § 1920.

In the alternative, counsel argues that the $20,000 must be viewed as a fine in the nature of criminal contempt. Counsel asserts that although Bankruptcy Courts have the authority to enter civil contempt orders, their power to punish a criminal contemnor is restricted to situations in which the conduct occurs in the presence of the judge.

Further, appellant's counsel notes that the Clerk of the Court testified that the administrative expenses incurred, including administrative salaries and court reporter's fees, as a result of the allegedly frivolous motions, were approximately $1,000. Counsel therefore argues that the court's imposition of $20,000 as sanctions for these expenses was excessive and an abuse of discretion.

This Court notes for the record that appellee's counsel has made no specific response in his brief to these latter arguments of appellant's counsel.

### THE GOVERNING LAW

■ Bankruptcy Rule 8013 provides as follows:

> "On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy court's judgment, order or decree or remand with instructions for further proceedings. *Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses*" (emphasis supplied).

A district court therefore may review a Bankruptcy Court's legal conclusions *de novo*, but the Bankruptcy Court's findings of fact may not be set aside unless clearly erroneous (*see Shugrue v. Air Line Pilots Assoc. Int'l*, 922 F.2d 984, 988 [2d Cir.1990]; *In re Southold Development Corp.*, 134 B.R. 705, 708 [E.D.N.Y.1991]).

Further, Bankruptcy Rule 9011 provides, in pertinent part, as follows:

> "**(a) Signature.** Every petition, pleading, motion and other paper served or filed in a case under the Code on behalf of a party represented by an attorney ... shall be signed by at least one attorney of record in his individual name, whose office address and telephone number shall be stated.... The signature of an attorney or a party constitutes a certificate by him that he has read the document; that to the best of his knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass, to cause delay, or to increase the cost of litigation...."

### DISCUSSION

As the Second Circuit observed in *Matter of Cohoes Indus. Terminal, Inc.*, 931 F.2d 222, 227 [2d Cir.1991], "As in Rule 11 cases, we review the imposition of sanctions pursuant to Bankruptcy Rule 9011 using the abuse of discretion standard" (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 110 S.Ct. 2447, 110 L.Ed.2d 359 [1990]). Judge Altimari further noted that "[w]e are mindful however that 'legal errors on the part of the [lower courts] will constitute an abuse of discretion'" (*id.*, quoting *Mareno v. Rowe*, 910 F.2d 1043, 1047 [2d Cir.1990], *cert. denied*, 498 U.S. 1028, 111 S.Ct. 681, 112 L.Ed.2d 673 [1991]).

■ A Bankruptcy Court has wide discretion to determine the appropriate sanction under Rule 9011 (*see Hudson v. Moore Business Forms, Inc.*, 836 F.2d 1156, 1163 [9th Cir.1987]). The Second Circuit in *Eastway Const. Corp. v. City of New York*, 762 F.2d 243 (2d Cir.1985), *cert. denied*, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987), pronounced the test to be used in determining whether Rule 11 violations have occurred:

> "sanctions shall be imposed against an attorney and/or his client when it appears that a pleading has been interposed for any improper purpose, *or where*, after *reasonable inquiry*, a competent attorney could not form a reasonable belief that the pleading is well-grounded in fact and is warranted by existing law or a good faith

argument for the extension, modification or reversal of existing law."

*Id.* at 254 (emphasis supplied); *see also In re PCH Associates,* 122 B.R. 181, 206 (Bankr. S.D.N.Y.1990).

The instant case is somewhat unusual. Most of the cases in the circuit courts discuss the imposition of sanctions upon a *debtor* for the bad faith filing of a Chapter 7, 11 or 13 petition, particularly where the filing is expressly intended to frustrate creditors. Here, however, the debtor moved in a separate adversary proceeding to have sanctions imposed upon counsel for Chandler's Cove Ltd. based upon counsel's motion practice. Because of the uncommon character of this case, the Court will address the individual issues raised by the appellant in the context of the actual findings made by the Bankruptcy Court.

■ With regard to the basis for imposing sanctions, the Court finds, contrary to the appellant's assertions, that the Bankruptcy Court did invoke its inherent equitable powers, along with Rule 9011. This is revealed in the February 28, 1992 order of the Bankruptcy Court, in which Judge Holland, in granting Cedar Tide's motion for summary judgment on the complaint, stated the following:

"ORDERED, that a hearing will be held by this Court on the 16th day of April 1992 at 9:30 in the forenoon of that day, in order to determine the following issues:

\*　　\*　　\*　　\*　　\*　　\*

(ii) whether the proof of claim filed on behalf of Chandler's Cove Inn, Ltd. in Cedar Tide Corp's case on April 18, 1991, subjects the person who signed and filed said proof of claim to sanctions pursuant to Fed.R.Bankr.P. 9011 *and the Court's inherent power to sanction bad faith conduct,* and to determine whether Sidney Mintz's involvement in that matter, if any, *subjects him to sanctions pursuant to the Court's inherent power ...*" (emphasis supplied).

This same language was repeated in the Bankruptcy Court's July, 1992 "Proposed Findings of Fact and Conclusions of Law."

Further, during the June 11, 1992 hearing on the sanctions issues, the court stated that "... Today's proceeding is a hybrid proceeding. We are proceeding today not only to determine the amount of sanctions asked for in the adversary proceeding brought by Mr. Arbeit's firm, but *under not only the general powers but the general obligations of the Court to impose sanctions where appropriate under Bankruptcy Rule 9011 ...*" (Hearing Transcript, at p. 203).

Given these instances, there is no doubt that the Bankruptcy Court was invoking its inherent power to impose sanctions, in addition to Rule 9011.

■ Although there is some merit in the appellant's claim that Cedar Tide could have moved for sanctions in the initial bankruptcy action, there was nothing to prevent Cedar Tide from pursuing injunctive relief in a separate adversary proceeding.

Accordingly, on the totality of the evidence, including the six motions at issue, the Court confirms the imposition of sanctions against the defendant Sidney Mintz. However, the amount of sanctions must be modified, and vacated in part.

■ In paragraph 13 of the complaint filed by Cedar Tide against Sidney Mintz, PBSA stated that it had spent "over 20 hours in reviewing the aforementioned applications." The appellant contends that PBSA was therefore limited to the relief it sought in the pleading, namely 20 hours expended, particularly since Cedar Tide at no time made any attempt to amend the complaint.

However, the Bankruptcy Court's observations during the June 11, 1992 hearing dispel this argument. In discussing the long delay between the date when the motions were fully submitted and the actual decision date, the Bankruptcy Court stated the following:

"Indeed that was the longest delay of any decision that I have ever addressed. Part of the delay was to enable me to determine whether or not the mere bringing of the adversary proceeding and the making of the motion for summary judgment might in and of itself have had a rehabilitative effect and indeed in view of the dormancy

of this case for a substantial period of time I had almost come to the conclusion that nominal sanctions would have been appropriate because the offensive actions on the part of the Defendant had just about terminated.

I then was made painfully aware that this was not the case *when the proof of claim was filed, the proof of claim that Ms. Fortuna signed, the proof of claim that was prepared by Mr. Mintz and filed by Mr. Mintz. That proof of claim was at least as egregious as any of the activities that was the subject of the underlying adversary proceeding as addressed in the February 7, 1992 decision.*" (Hearing Transcript, at pp. 203–204).

The proof of claim was signed by Susan Fortuna, Secretary of Chandler's Cove Inn, Ltd., on April 18, 1991, and was received by the Clerk of the Eastern District Bankruptcy Court on April 23, 1991. This action on behalf of Chandler's Cove took place long after oral argument of the summary judgment motions on September 30, 1987, and there is no doubt that the appellant was on notice of the issues which had been raised and the potential for the imposition of sanctions. Nonetheless, the proof of claim was filed.

In light of that filing, this Court finds that there was no abuse of discretion on the part of the Bankruptcy Court in considering the additional filing when reaching a decision on the sanctions motion, and in not restricting the relief to the 20 hours set forth in the complaint. In fact, the Bankruptcy Court specifically found in its July, 1992 "Proposed Findings of Fact and Conclusions of Law" that the attorneys for Cedar Tide expended in excess of fifty hours in opposing both the motions and the proof of claim. That finding is not clearly erroneous and therefore will not be set aside (*see In re Carib–Inn of San Juan Corp.*, 130 B.R. 6, 9 [Bankr.D.Puerto Rico 1991] [counsel's "hyperactivity and relentless filings and re-filings in this Court constitute abusive and frivolous conduct," warranting sanctions in the form of reasonable counsel fees necessary to oppose the motions]; *In re Geller*, 96 B.R. 564 [Bankr. E.D.Pa.1989] ).

Rule 9011 provides that in determining the appropriate sanction, a court "may include an order to pay to the other party or parties the amount of reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee." The measure of sanctions under this language is not the actual fees and expenses incurred, but those that the court determines to be reasonable (*see, e.g., Jackson v. Law Firm of O'Hara, Ruberg, Osborne and Taylor*, 875 F.2d 1224, 1229 [6th Cir.1989] ). Another factor guiding its discretion is that a court should impose the least severe sanction likely to serve Rule 11's principal goal— deterrence (*Jackson*, 875 F.2d at 1229). The primary purpose in imposing sanctions under bankruptcy's counterpart to Rule 11 is to deter future violations of the rule; compensating an opposing party is a secondary purpose (*see In Matter of Reynolds*, 117 B.R. 452 [Bankr.S.D.Iowa 1990] ).

In this case, it appears from the exhibits supplied by the appellant that counsel for Cedar Tide, Robert Arbeit, submitted a statement of damages to Judge Holland for the sum of $9,205.00, broken down by hours expended on 21 separate dates from March 1987 through October 1991. Arbeit listed a total of 51 hours, reflecting 45.85 hours billed at $175.00 per hour and 5.25 hours billed at $225 per hour. Arbeit then asked Judge Holland to treble the damages, to an amount in excess of $27,000.00, claiming that sanctions under Rule 9011 are not necessarily limited to a reasonable attorney's fee.

The appropriate standard to be applied in analyzing actions under Rule 9011 is "reasonableness under the circumstances" (*Matter of Malmen*, 140 B.R. 819, 824 [Bankr.M.D.Fla.1992] ) (citing *Aetna Ins. Co. v. Meeker*, 953 F.2d 1328, 1331 [11th Cir. 1992]). This objective standard requires the Court "to go beyond mere assertions of good faith and determine instead whether a reasonable person would have taken the actions taken by the attorney in a particular case" (*id.*). The starting point in determining an appropriate sanction based upon the cost of attorneys' fees is "the calculation of the time reasonably expended in responding to the

improper signing which is then multiplied by a reasonable hourly rate" (*In re Wonder Corp. of America*, 109 B.R. 18, 32 [Bankr. D.Conn.1989]).

Although the Bankruptcy Court did not grant PBSA's request for treble damages, it did impose a sanction of $15,000.00 to be paid by Sidney Mintz as a reasonable attorney's fee to PBSA. Having thoroughly reviewed the record, this Court is unable to find adequate grounds to impose a reasonable attorney's fee beyond the $9,205.00 sum submitted by PBSA itself. The Court further notes that the $9,205.00 requested by PBSA in its statement of damages included hours spent defending the notice of claim filed by Susan Fortuna. In light of this information, the Court modifies the award of fees to PBSA by reducing the amount of the sanction imposed from $15,000.00 to $9,205.00. Of this sum, $770.00 will be joint and several with Susan Fortuna, representing the same ratio as that employed by the Bankruptcy Court.

Further, the Court cannot confirm the remaining sanctions, namely $15,000.00 payable to the clerk of the Bankruptcy Court and $5,000.00 proposed as payable to a *pro bono* fund. Mindful of the chilling effect the objective standard could have on legal creativity, the Second Circuit counseled courts to "strive to avoid the wisdom of hindsight in determining whether a pleading was valid when signed," and urged that "any and all doubts must be resolved in favor of the signer." *Eastway*, 762 F.2d at 254. This Court is also cognizant of the United States Supreme Court's instructive comments in this area as set forth in *Chambers v. NASCO, Inc.*, 501 U.S. 32, ——––——, 111 S.Ct. 2123, 2132–33, 115 L.Ed.2d 27 (1991): "[t]his Court recognizes the imposition of sanctions in any form must be made with some reservation taking into consideration the goal of deterring inappropriate behavior while at the same time encouraging diligent advocacy."

Under these standards, the record does not support the Bankruptcy Court's imposition of sanctions in the additional amounts of $15,000.00 and $5,000.00. There is no indication in the record that the court considered the "reasonableness" of the amount claimed as sanctions by the appellee. The Court is

further troubled by the *sua sponte* award of additional sanctions brought upon by means of the testimony of the clerk of the court. Upon review of the record, there is no particularization of how these additional amounts relate to the six individual motions brought by Sidney Mintz, nor any suggestion that the court "considered adjusting the sanction award to reflect the deterrence purpose of Rule 9011" (*In re Rainbow Magazine, Inc.*, 136 B.R. 545, 555 [Bankr. 9th Cir.1992]). Further, this Court is concerned that the sanctions awarded in this case proportionately are more severe than those awarded in some of the bad faith filing cases (*see, e.g., Carolin Corp. v. Miller*, 886 F.2d 693 [4th Cir.1989]; *In re Cedar Falls Hotel Properties Ltd. Partnership*, 102 B.R. 1009 [Bankr. N.D.Iowa 1989]).

The Court also takes note of the fact that during oral argument of the appeal, counsel for the debtor-appellee acknowledged that he could present no basis in statute or case law for the imposition of sanctions as awarded in subsections (ii) and (iii) of the Bankruptcy Court's February 28, 1992 Order nor in the judgment entered in September, 1992. Given these circumstances, the Court finds that the imposition of sanctions in the additional amounts of $15,000.00 and $5,000.00 was an abuse of discretion by the Bankruptcy Court. Those portions of the February 28, 1992 Order and the September, 1992 judgments granting the imposition of additional sanctions are reversed, and these sanctions are vacated.

### CONCLUSION

In light of the foregoing, the February 28, 1992 Order of the United States Bankruptcy Court and the September 1, 1992 judgment are modified in part and reversed in part, as follows:

1. the $15,000.00 sanction against Sidney Mintz payable to PBSA to be credited to the account of Cedar Tide in the bankruptcy proceeding and entered as subsection (i) of the September 1, 1992 judgment, is hereby modified to the sum of $9,205.00, of which $770.00 will be joint and several with Susan Fortuna;

2. the $15,000.00 sanction against Sidney Mintz, $1,250 of which was to be joint and several with Susan Fortuna, payable to the Clerk of the Court for transmission to the Treasury of the United States and entered as subsection (ii) of the September 1, 1992 judgment is reversed and vacated; and

3. the $5,000.00 sanction against Sidney Mintz, $750.00 of which was to be joint and several with Susan Fortuna, payable to a proposed reimbursement fund for *pro bono* counsel, and entered as subsection (iii) of the September 1, 1992 judgment is reversed and vacated.

The appellant Sidney Mintz is given thirty days from the date of this Decision and Order to deliver to the law firm of Pinks, Brooks, Stern & Arbeit, a check in the sum of $9,205.00, payable to PBSA to be credited to the account of Cedar Tide, which has been imposed as a sanction for his frivolous motion practice in this matter in the Bankruptcy Court.